| | | |
|---|---|---|
| 7. | Earnings Quality Analytics Alert: Biovail Corp. | 9/16/2003 |
| 8. | InterMune, Inc. Research Report | 9/26/2003 |
| 9. | Earnings Quality Analytics Bulletin: (Biovail Corp.) | 10/7/2003 |
| 10. | Earnings Quality Analytics Bulletin: (Biovail Corp.) | 10/30/2003 |
| 11. | Odyssey Healthcare, Inc. Research Report | 10/17/2003 |
| 12. | Odyssey Healthcare, Inc. Research Report | 10/30/2003 |
| 13. | Earnings Quality Analytics Bulletin: (Biovail) | 11/21/2003 |
| 14. | Overstock.com Research Report | 12/5/2003 |
| 15. | Celgene Corp. Research Report | 12/15/2003 |
| 16. | Baxter International, Inc. Research Report | 12/18/2003 |
| 17. | Celgene Corp. Research Report | 12/19/2003 |
| 18. | AstraZeneca PLC Research Report | 1/7/2004 |
| 19. | Biovail Corp. Research Report | 1/23/2004 |
| 20. | InterMune, Inc. Research Report | 2/19/2004 |
| 21. | Earnings Quality Analytics: Watch List (BioLase, Biosite) | 2/20/2004 |
| 22. | Earnings Quality Analytics Bulletin: Biovail Corp. | 3/3/2004 |
| 23. | Earnings Quality Analytics: Biovail Corp. | 3/5/2004 |
| 24. | Overstock.com Research Report | 3/18/2004 |
| 25. | BioLase Technology, Inc. Research Report | 3/19/2004 |
| 26. | Biosite Inc. Research Report | 3/26/2004 |
| 27. | Odyssey Healthcare, Inc. Research Report | 4/20/2004 |
| 28. | Earnings Quality Analytics: Watch List (Cardinal Health, Krispy Kreme) | 5/14/2004 |
| 29. | BioLase Technology, Inc. Research Report | 5/20/2004 |
| 30. | Krispy Kreme Doughnuts, Inc. Research Report | 5/21/2004 |
| 31. | King Pharmaceuticals, Inc. Research Report | 5/28/2004 |
| 32. | Take-Two Interactive Software Research Report | 6/10/2004 |
| 33. | The Shaw Group Research Report | 6/16/2004 |
| 34. | Earnings Quality Analytics Bulletin: Biovail Corp. | 6/28/2004 |
| 35. | Earnings Quality Analytics Alert: Biovail Corp. | 6/30/2004 |
| 36. | Earnings Quality Analytics: Greatest Concerns List (Overstock, R. Donnelly & Sons, Cubic Corp., InterMune, Krispy Kreme, TakeTwo Interactive) | 7/1/2004 |
| 37. | R.R. Donnelly & Sons Research Report | 7/13/2004 |
| 38. | Novastar Financial, Inc. Research Report | 7/14/2004 |
| 39. | Cubic Corp. Research Report | 7/16/2004 |
| 40. | The Shaw Group Research Report | 7/16/2004 |
| 41. | Swift Transportation Research Report | 7/16/2004 |
| 42. | Novastar Financial Inc. Research Report | 7/27/2004 |
| 43. | Earnings Quality Analytics Alert: (Biovail) | 8/4/2004 |
| 44. | Earnings Quality Analytics: Greatest Concerns List (BioLase, Cubic, InterMune, Krispy Kreme, Overstock, R.R. Donnelly & Sons, TakeTwo Interactive) | 8/11/2004 |
| 45. | BioLase Technology, Inc. Research Report | 8/16/2004 |
| 46. | Earnings Quality Analytics Alert (Overstock.com) | 8/24/2004 |
| 47. | Novastar Financial, Inc. Research Report | 8/25/2004 |
| 48. | Earnings Quality Analytics Alert (Overstock.com) | 8/26/2004 |
| 49. | Earnings Quality Analytics: Greatest Concerns List (Cubic, InterMune, Krispy Kreme, Overstock, R.R. Donnelly & Sons, TakeTwo Interactive) | 9/9/2004 |
| 50. | Krispy Kreme Doughnuts, Inc. Research Report | 9/14/2004 |
| 51. | Netflix, Inc. Research Report | 9/21/2004 |
| 52. | Earnings Quality Analytics: Greatest Concerns List (Cardinal Health, Cubic, InterMune, Krispy Kreme, Overstock, R.R. Donnelly & Sons, TakeTwo Interactive) | 9/24/2004 |
| 53. | Novastar Financial Inc. Research Report | 9/24/2004 |
| 54. | Avon Products, Inc. Research Report | 10/6/2004 |
| 55. | Earnings Quality Analytics: Greatest Concerns List (Cardinal Health, Cubic, InterMune, Krispy Kreme, Overstock, R.R. Donnelly & Sons, TakeTwo Interactive) | 10/8/2004 |
| 56. | King Pharmaceuticals, Inc. Research Report | 10/29/2004 |
| 57. | Overstock.com Research Report | 11/3/2004 |
| 58. | Earnings Quality Analytics: Greatest Concerns List (Cardinal Health, Cubic, InterMune, Krispy Kreme, R.R. Donnelly & Sons, TakeTwo Interactive) | 11/8/2004 |
| 59. | Gradient Research Notes (Overstock.com) | 1/24/2005 |
| 60. | Overstock.com Research Report | 2/4/2005 |

| | | |
|---|---|---|
| 61. | Gradient Greatest Concerns List (Overstock.com) | 2/15/2005 |
| 62. | Gradient Greatest Concerns List (Overstock.com) | 2/23/2005 |
| 63. | Gradient Greatest Concerns List (Overstock.com) | 2/28/2005 |
| 64. | Gradient Greatest Concerns List (Overstock.com) | 3/7/2005 |
| 65. | Gradient Greatest Concerns List (Overstock.com) | 3/14/2005 |
| 66. | Gradient Greatest Concerns List (Overstock.com) | 4/11/2005 |
| 67. | Gradient Greatest Concerns List (Overstock.com) | 4/19/2005 |
| 68. | Gradient Greatest Concerns List (Overstock.com) | 4/25/2005 |
| 69. | Gradient Greatest Concerns List (Overstock.com) | 5/2/2005 |
| 70. | Gradient Greatest Concerns List (Overstock.com) | 5/4/2005 |
| 71. | Gradient Greatest Concerns List (Overstock.com) | 5/9/2005 |
| 72. | Earnings Quality Analytics: Watch List (Biovail Corp.) | 5/13/2005 |
| 73. | Gradient Greatest Concerns List (Overstock.com) | 5/16/2005 |
| 74. | Gradient Greatest Concerns List (Overstock.com) | 5/17/2005 |
| 75. | Gradient Greatest Concerns List (Overstock.com) | 5/23/2005 |
| 76. | Gradient Greatest Concerns List (Overstock.com) | 6/1/2005 |
| 77. | Gradient Greatest Concerns List (Overstock.com) | 6/6/2005 |
| 78. | Gradient Greatest Concerns List (Overstock.com) | 6/13/2005 |
| 79. | Gradient Greatest Concerns List (Overstock.com) | 6/20/2005 |
| 80. | Gradient Greatest Concerns List (Overstock.com) | 6/27/2005 |
| 81. | Gradient Greatest Concerns List (Overstock.com) | 7/13/2005 |
| 82. | Gradient Greatest Concerns List (Overstock.com) | 7/25/2005 |
| 83. | Gradient Greatest Concerns List (Overstock.com) | 8/19/2005 |
| 84. | Gradient Greatest Concerns List (Overstock.com) | 8/29/2005 |

## TABLE B
### CAMELBACK RESEARCH ALLIANCE CLIENTS

| | COMPANY | ADDRESS | CITY/STATE |
|---|---|---|---|
| 1. | 3V Capital | 800 Washington Avenue, Suite 615 | Minneapolis, MN |
| 2. | Adage Capital | 200 Clarendon Street, 52nd Fl. | Boston, MA |
| 3. | Aesop Capital Partners | 457 Pacific Avenue | San Francisco, CA |
| 4. | Alpha Equity Mgmt., LLC | 19A Ensign Drive | Avon, CT |
| 5. | American Express | 707 2nd Avenue S. | Minneapolis, MN |
| 6. | Apex Capital, LLC | 24 Orinda Way, #300 | Orinda, CA |
| 7. | Applied Financial Research | 1229 Johnson Ferry Road | Marietta, GA |
| 8. | Art Advisors, LLC | 500 Park Avenue, 7th Fl. | New York, NY |
| 9. | Atlas Capital Mgmt., LP | 100 Crescent Court, #880 | Dallas, TX |
| 10. | Bear Stearns & Co., Inc. | 383 Madison Avenue | New York, NY |
| 11. | Bessent Capital, LLC | 900 Third Avenue, 29th Fl. | New York, NY |
| 12. | Black Mesa Capital | 125 Lincoln Avenue, Suite 200 | Santa Fe, NM |
| 13. | Canyon Capital Advisors, LLC | 9965 Wilshire Boulevard, #200 | Beverly Hills, CA |
| 14. | Cargill Inc. | 12700 Whitewater Drive | Minnetonka, MN |
| 15. | Clovis Capital Mgmt., LP | 1270 Avenue of the Americas, 27th Fl. | New York, NY |
| 16. | Colonial Fund | 1270 Avenue of the Americas, 12th Fl. | New York, NY |
| 17. | Columbia Partners Investment | 1775 Pennsylvania Avenue, NW, 10th Fl. | Washington, DC |
| 18. | Criterion Capital Mgmt., LLC | 435 Pacific Avenue, 4th Fl. | San Francisco, CA |
| 19. | Crosslink Capital, Inc. | Two Embarcadero Ctr., #2200 | San Francisco, CA |
| 20. | DMG Advisors, LLC/North Sound Capital | One Sound Shore Drive, #202 | Greenwich, CT |
| 21. | DMG Advisors, LLC/SDS Capital | 53 Forest Avenue, Suite 203 | Old Greenwich, CT |
| 22. | Eubel Brady Suttman Asset Mgmt. | 7777 Washington Village Dr., #210 | Dayton, OH |
| 23. | Fiduciary Asset Mgmt., LLC | 8112 Maryland Avenue, Suite 400 | St. Louis, MO |
| 24. | Fifth Third Bank Investment Advisors | 38 Fountain Sq. Plaza, 14th Fl. | Cincinnati, OH |
| 25. | Freestone Capital Mgmt. | 1191 2nd Avenue, #2100 | Seattle, WA |
| 26. | Frontpoint Partners - Ivory Capital Group | 100 Wilshire Blvd., #1830 | Santa Monica, CA |
| 27. | Gabelli Asset Mgmt. | One Corporate Center | Rye, NY |
| 28. | George Weiss & Associates | 320 Park Avenue, 20th Fl. | New York, NY |
| 29. | Glenhill Capital/Krevlin Advisors | 650 Madison Avenue, 26th Fl. | New York, NY |
| 30. | Globalflex Capital, LP | 4365 Executive Drive, #720 | San Diego, CA |
| 31. | GMT Capital Corp. | 2100 Riveredge Parkway, #840 | Atlanta, GA |

| 32. | GRT Capital Partners, LLC | Four Liberty Square, 3rd Fl. | Boston, MA |
|---|---|---|---|
| 33. | Hottinger Capital Corp. | 1270 Avenue of the Americas, Suite 400 | New York, NY |
| 34. | Jemmco Investment Mgmt. | 990 Third Avenue | New York, NY |
| 35. | John A. Levin & Co. | 1 Rockefeller Plaza | New York, NY |
| 36. | Kuhn Asset Mgmt. | 107 North Broad Street, Suite 107 | Doylestown, PA |
| 37. | Kynikos Associates, Ltd. | 20 W. 55th Street, 8th Fl. | New York, NY |
| 38. | Lee Munder Investments, Ltd. | 200 Clarendon Street, 28th Fl. | Boston, MA |
| 39. | Libra Advisors, LLC | 909 Third Avenue, 29th Fl. | New York, NY |
| 40. | Loeb Partners Mgmt., Inc./Loeb Artibtrage Mgmt. | 61 Broadway, 24th Fl. | New York, NY |
| 41. | Loomis Sayles & Co., LP | One Financial Center, 36th Fl. | Boston, MA |
| 42. | Lotsoff Capital Mgmt. | 20 North Clark Street | Chicago, IL |
| 43. | Marketocracy Capital Mgmt. | P.O. Box BO | Los Altos, CA |
| 44. | Mellon HBV Capital Mgmt. | 200 Park Avenue | New York, NY |
| 45. | Micro Capital | 410 Jessie Street, Suite 1002 | San Francisco, CA |
| 46. | Miramar Asset Mgmt. | One Sansome Street, #3134 | San Francisco, CA |
| 47. | Normandy Asset Mgmt. | 150 East 52nd Street | New York, NY |
| 48. | Northrup Capital | 3020 McFarlin Boulevard | Dallas, TX |
| 49. | Oppenheimer Funds, Inc. | 498 7th Avenue | New York, NY |
| 50. | OZ Management, LLC | 9 West 57th Street, 39th Fl. | New York, NY |
| 51. | Parnassus Investments | One Market Plaza, Steuart Tower #1600 | San Francisco, CA |
| 52. | Pequot Capital Mgmt. | 153 East 53rd Street, 35th Fl. | New York, NY |
| 53. | Phoenix Investment Partners | 56 Prospect Street, 2nd Fl. | Hartford, CT |
| 54. | Pinnacle Investment Advisors | 14614 N. Kierland Blvd., Suite S-260 | Scottsdale, AZ |
| 55. | Polygon Investment Partners | 10 Duke of York Square, Kings Rd. | London, England |
| 56. | Porter Felleman | 666 Fifth Avenue, 34th Fl. | New York, NY |
| 57. | Prediction Co. | 525 Camino De Los Marquez, Suite 6 | Santa Fe, NM |
| 58. | Ramsey Quantitative Systems | 108 S. Madison Avenue | Louisville, KY |
| 59. | Redsky Partners | 800 Nicollet Mall, 25th Fl. | Minneapolis, MN |
| 60. | Rigel Capital Mgmt. | 601 Union Street, 3930 Two Union Square Bldg. | Seattle, WA |
| 61. | Rocker Mgmt., LCC. | 374 Millburn Avenue, #205E | Millburn, NJ |
| 62. | Royal Capital Mgmt. | 575 Lexington Avenue | New York, NY |
| 63. | RRH Capital Mgmt. | 331 Park Avenue South, #417 | New York, NY |
| 64. | RS Investment Mgmt., LP | 388 Market Street, #1700 | San Francisco, CA |
| 65. | SAC Capital-HealthCo Partners | 540 Madison Avenue, 9th Fl. | New York, NY |
| 66. | SciVest Capital Mgmt. | 1 First Canadian Place, 100 King Street West | Toronto, Canada |
| 67. | Skye Investment Advisors, LLC | 2825 El Camino Real | Redwood City, CA |
| 68. | Soros Asset Mgmt. | 888 Seventh Avenue, 33rd Fl. | New York, NY |
| 69. | Stone Capital | 207 Brookshire Lane | Beckley, WV |
| 70. | SuttonBrook Capital Mgmt. | 654 Madison Avenue, #1009 | New York, NY |
| 71. | Talon Asset Mgmt. | One North Franklin Street, Suite 900 | Chicago, IL |
| 72. | Tapke Asset Mgmt. | 2734 Chancellor Drive, Suite 108 | Crestview Hills, KY |
| 73. | Thrivant Investment Managers | 222 West College Avenue | Appleton, WI |
| 74. | Tiedemann Investment Group | 535 Madison Avenue | New York, NY |
| 75. | Touchstone Investment Managers, LLC | 920 S.W. Sixth Street, #261 | Portland, OR |
| 76. | Trafeler & Co. | 900 Third Avenue, 5th Fl. | New York, NY |
| 77. | Trenton Capital Mgmt. | 5956 Sherry Lane, #1810 | Dallas, TX |
| 78. | Tudor Investment Corp. | 1275 King Street | Greenwich, CT |
| 79. | Veredus Asset Mgmt. | 6060 Dutchmans Lane, #320 | Louisville, KY |
| 80. | Water Street Capital | 225 Water Street, #1987 | Jacksonville, FL |
| 81. | Wexford Capital, LLC | 411 West Putnam Avenue | Greenwich, CT |
| 82. | Ziff Brothers Investments, LLC | 153 East 53rd Street, 43rd Fl. | New York, NY |

158.   The Camelback Defendants also sent the following eight "hatchet jobs," set forth in Table C, by electronic mail and U.S. mail to no fewer than 812 potential clients, some of whom were targeted because the Camelback Defendants knew they were the target companies' largest shareholders.

| TABLE C CAMELBACK REPORTS SENT TO CONTACTS | | | |
|---|---|---|---|
| COMPANY REPORT | DATE SENT | KNOWN RECIPIENTS | INCLUDING INDIVIDUAL RECIPIENTS AT THE FOLLOWING COMPANIES |
| Biovail Corp. | 6/10/2003 | 1 | Timothy McCarthy at SAC Healthco |
| Baxter International | 9/24/2003 | 131 | J&W Seligman & Co.<br>Mercantile Safe Deposit & Trust<br>MacKay Shields<br>MFS Investment Mgmt.<br>Merrill Lynch Investment Mgrs.<br>Palisade Capital Mgmt.<br>Goldman Sachs Asset Mgmt.<br>John Hancock Advisors |
| IMPATH, Inc. | 07/30/2003 (2:00 p.m.) | 326 | Needham Investment<br>Lazard Asset Mgmt.<br>Pitcairn Trust<br>Logan Capital Mgmt.<br>J&W Seligman & Co.<br>Marco Investmt. Mgmt.<br>Palisade Capital Mgmt.<br>PNC Advisors<br>Mercantile Safe Deposit & Trust<br>MacKay Shields<br>MFS Investment Mgmt.<br>Markston Invesmt. Mgmt.<br>CS McKee & Co.<br>Putnam Investment Mgmt.<br>Punk Ziegel & Co.<br>Johnston Asset Mgmt. Co.<br>John Hancock Advisors<br>Merrill Lynch |
| IMPATH, Inc. | 07/30/2003 (12:35 p.m.) | 27 | Goldman Sachs Asset Mgmt.<br>Ohio State Teachers Retirement<br>Pequot Capital Mgmt. |

| InterMune, Inc. | 9/30/2003 (4:43 p.m.) | 31 | Merrill Lynch Investment Mgrs.<br>Orbimed |
|---|---|---|---|
| InterMune, Inc. | 9/30/2003 (4:40 p.m.) | 82 | J&W Seligman & Co.<br>Goldman Sachs Asset Mgmt.<br>John Hancock Advisors |
| Take-Two Inter. | 8/5/2003 | 156 | Larchmont Capital Mgmt.<br>JP Morgan Asset Mgmt.<br>Independence Investment<br>MFS Investment Mgmt.<br>PAR Capital Mgmt.<br>Grantham Mayo Von Otterloo<br>JL Kaplan Associates<br>Morgan Stanley Investment Mgmt.<br>MacKay Shields<br>Merrill Lynch Investment Mgrs.<br>Kings Point Partners<br>Goldman Sachs |
| WebMD Corp. | 9/5/2003 | 59 | PNC Advisors<br>MFS Investment Mgmt.<br>Markston Investment Mgmt.<br>Goldman Sachs Asset Mgmt.<br>John Hancock Advisors |

159.    Maris, or Banc of America Securities employees acting at his direction,

disseminated approximately 41 reports set forth in Table D, to clients by electronic mail.  No

fewer than 14 of Maris's clients are confirmed to have to have received reports from Maris, as set

forth in Table E.  Each of these clients were sent each of Maris's other reports by electronic mail,

constituting approximately 574 separate fraudulent communications.

| TABLE D<br>MARIS BAS REPORTS | |
|---|---|
| BAS Report/Bulletin | Date |
| 1.   Biovail Corporation: Initiating Coverage with Sell Rating- Big Gap to GAAP | 10/8/2003 |
| 2.   Biovail Corporation: Glaxo Confirms Wellbutrin - S Active Development | 10/9/2003 |
| 3.   Biovail Corporation: Big Gap to GAAP | 10/10/2003 |
| 4.   Specialty Pharma Weekly Checkup: Gearing Up for Earnings | 10/10/2003 |
| 5.   Specialty Pharma Daily Checkup | 10/10/2003 |

| | | |
|---|---|---|
| 6. | Biovail Corporation: Labopharm's European Phase III Data for Tramadol 1x Day | 10/15/2003 |
| 7. | Specialty Pharma Daily Checkup | 10/16/2003 |
| 8. | Specialty Pharma Daily Checkup | 10/23/2003 |
| 9. | Specialty Pharma Daily Checkup | 10/28/2003 |
| 10. | Specialty Pharma Daily Checkup | 10/29/2003 |
| 11. | Biovail Corporation: Biovail Misses 3Q and Dramatically Lowers 2003 and 2004 Guidance - Reiterate Sell Rating | 10/31/2003 |
| 12. | Specialty Pharma Weekly Checkup: For Some, A Scary Earnings Week | 10/31/2003 |
| 13. | Specialty Pharma: Weekly Prescriptions Trends | 11/3/2003 |
| 14. | Biovail Corporation: New Disclosure Regarding CEO's Stock Pledged Against Personal Loan | 11/10/2003 |
| 15. | Biovail Corporation: SEC Launches Informal Investigation | 11/20/2003 |
| 16. | Specialty Pharma Weekly Checkup: Slow Start to an Exciting Week | 11/21/2003 |
| 17. | Specialty Pharma Daily Checkup | 11/21/2003 |
| 18. | Specialty Pharma Weekly Checkup: Short, But Busy Week | 11/28/2003 |
| 19. | Specialty Pharma Monthly Checkup - December 2003 | 12/2003 |
| 20. | Biovail Corporation: New Disclosures in Quarterly Filing | 12/1/2003 |
| 21. | Biovail Corporation: Glaxo Sheds Some Light on Next - Generation Wellbutrin | 12/3/2003 |
| 22. | Specialty Pharma Daily Checkup | 12/3/2003 |
| 23. | Specialty Pharma Weekly Checkup: Trading In-Line | 12/5/2003 |
| 24. | Specialty Pharma Daily Checkup | 12/11/2003 |
| 25. | Specialty Pharma Weekly Checkup: Volatile Week Ends Flat | 12/12/2003 |
| 26. | Specialty Pharma Weekly Checkup: Strong Outperformance | 1/23/2004 |
| 27. | Biovail Corporation: CEO Sells More Stock | 1/26/2004 |
| 28. | Special Pharma Daily Checkup: Daily Performance | 1/27/2004 |
| 29. | Specialty Pharma Daily Checkup | 2/23/2004 |
| 30. | Specialty Pharma Daily Checkup | 2/26/2004 |
| 31. | Specialty Pharma Daily Checkup | 3/1/2004 |
| 32. | Specialty Pharma Daily Checkup | 3/2/2004 |
| 33. | Specialty Pharma Daily Checkup | 3/3/2004 |
| 34. | Specialty Pharma Daily Checkup | 3/4/2004 |
| 35. | Biovail Corporation: Bad Becomes Worse -- Another Biovail Quarter | 3/4/2004 |
| 36. | Specialty Pharma Daily Checkup | 3/5/2004 |
| 37. | Specialty Pharma Weekly Checkup: Earnings Season Comes to a Close | 3/5/2004 |
| 38. | Biovail Corporation: Biovail Conducting Full Internal Review of Insider Trading | 3/5/2004 |
| 39. | Biovail Corporation: Possible Debt Rating Downgrade | 3/8/2004 |
| 40. | Specialty Pharma Daily Checkup | 3/9/2004 |
| 41. | Specialty Pharma Daily Checkup | 3/11/2004 |

TABLE E
MARIS'S KNOWN CLIENTS OR CONTACTS

| CLIENT | COMPANY |
|---|---|
| 1.  Jeffrey Bianchi | AeltUs |
| 2.  Thomas Timey | American Century Investments |
| 3.  Jeff Sohm | CSFB New York |
| 4.  Wendy Nichols | CSFB Canada |
| 5.  Alex Vallecillo | National City Corp. |
| 6.  Kurt Von Emster | MPM Capital |
| 7.  Tim McCandless | Symmetry Capital |
| 8.  Duncan Stewart | Tera Capital |
| 9.  Barney Rosen | Satoha Management |
| 10.  Andy Georgiades | Dow Jones News |
| 11.  Karen Hehenberger | Brummer & Partners |
| 12.  Sang Lee | Claiborne Capital |
| 13.  Francesca Allen | AmSouth Asset Management |
| 14.  Clive Correia | Columbus Circle Investors |

160.   The S.A.C. Defendants and Maris and his staff spoke on the phone and used electronic mail regularly to discuss the activities of the Enterprise.  The total number of phone calls and e-mails and the identities of all Enterprise members is not yet known but the following Enterprise members engaged in the following 26 phone calls and e-mails, as set forth in Table F, each constituting a separate wire communication in furtherance of the fraudulent scheme:

TABLE F
MARIS COMMUNICATIONS

| Sender/Caller | Recipient | Date | Subject | Method |
|---|---|---|---|---|
| Tim McCarthy SAC Healthco | David Maris BAS | 7/08/2003 | Andre Uddin Research Capital Report on Biovail dated July 8, 2003 | E-mail |
| David Maris BAS | Wendy Commins Ziff Brothers Invst. | 7/11/2003 | Generic Wellbutrin XL | Phone call |
| Tim McCarthy SAC Healthco110 | Kim-Linh Vukhac BAS | 7/22/2003 | FDA decision on Wellbutrin XL | Phone call |
| David Maris BAS | Wendy Commins Ziff Brothers Invst. | 7/23/2003 | Andrx plans on generic Wellbutrin XL | E-mail |
| Wendy Commins Ziff Brothers Invst. | David Maris BAS | 7/29/2003 | Teva Pharmaceutical and Biovail | E-mail |
| Wendy Commins Ziff Brothers Invst. | David Maris BAS | 10/3/2003 | Biovail truck accident | E-mail |
| David Maris BAS | Tim McCarthy SAC HealthCo. | 10/6/2003 | SAC HealthCo. short-selling Biovail | E-mail |
| Wendy Commins Ziff Brothers Invst. | David Maris BAS | 10/8/2003 | Biovail truck accident | E-mail |
| Tim McCarthy SAC Healthco | David Maris BAS | 10/9/2003 | Biovail truck accident | E-mail |

74

| | | | | |
|---|---|---|---|---|
| Tim McCarthy SAC Healthco | David Maris BAS | 10/10/2003 | Smith Barney position on Biovail | Phone call |
| Tim McCarthy SAC Healthco | David Maris BAS | 10/10/2003 | Maris's Oct. 10 Biovail Report | Phone call |
| David Maris BAS | Duncan Stewart Tera Capital | 10/14/2003 | Maris's Oct. 10 Biovail Report | Phone call |
| John Schroer Itros Capital | David Maris BAS | 10/29/2003 | Maris's Biovail Reports | E-mail |
| Tony Fiorino Sands Point Partners | David Maris BAS | 10/30/2003 | Biovail | Phone call |
| Wendy Commins Ziff Brothers Invst. | David Maris BAS | 10/31/2003 | Camelback Biovail Report dated October 30, 2003 | E-mail |
| Tim McCarthy SAC Healthco | Anne Friedrich BAS | 11/5/2003 | Eugene Melnyk trading activity | Phone call |
| Tony Fiorino Sands Point Partners | David Maris BAS | 11/12/2003 | Milberg Weiss class action against Biovail | E-mail |
| Tony Fiorino Sands Point Partners | David Maris BAS | 11/13/2003 | Eugene Melnyk trading activity | Phone call |
| Jon Weiner SAC Capital | David Maris BAS | 1/15/2004 | Biovail stock price surge | Phone call |
| Joe Healey Art Cohen Tim McCarthy SAC Healthco | David Maris BAS | 1/16/2004 | Biovail stock price surge | Phone call |
| Tim McCarthy SAC Healthco | David Maris BAS | 1/20/2004 | Biovail stock price surge | Phone call |
| Tim McCarthy & Joseph Healey SAC Healthco | David Maris BAS | 1/20/2004 | Biovail stock price surge | Phone call |
| Wendy Commins Ziff Brothers Invst. | David Maris BAS | 2/19/2004 | Information on SEC investigation into Biovail | Phone call |
| Steve A. Cohen SAC Capital | Donn Vickry & J. Carr Bettis Gradient Analytics | On or about 3/1/2004 | Additional "custom" reports | Phone call |
| David Maris BAS | Wendy Commins Ziff Brothers Invst. | 3/3/2004 | Biovail conference call | Phone call |
| Tim McCarthy SAC Healthco | David Lohman BAS | 7/6/2004 | Camelback Biovail Report dated June 28, 2004 | E-mail |

161.    The Gerson Lehrman Defendants orchestrated a series of conference calls to spread disinformation about Biovail. The total number of telephone calls and identities of each participant are not yet known, but the Enterprise members participated in the following phone call, as set forth in Table G, constituting a communication by wire by an agent of the Gerson Lehrman defendants in furtherance of the fraudulent scheme:

| TABLE G GERSON LEHRMAN TELEPHONE CALLS | | | |
|---|---|---|---|
| GL Council Agent | Enterprise Member | Date | Subject |
| Joseph Guzzo, M.D. | D. Sackler, Perry Capital | 7/22/2003 | Cardizem LA PLACE Program |

162.   As set forth herein, as part of their pattern of racketeering activities and in furtherance of and to assist their scheme and artifice to defraud Biovail, among others, each of the defendants knowingly, willfully, and unlawfully made misrepresentations or omissions of material fact for the purpose of harming Biovail's business and inducing Biovail shareholders and others to rapidly sell their Biovail shares and artificially depress the price of the common stock. Such misrepresentations and omissions, and the aiding and abetting such misrepresentations and omissions, constitute securities fraud in violation of N.J.S.A. 49:3-71, N.J.S.A. 2C:2-6, 15 U.S.C. §§ 73j and 73ff.

163.   Defendants' activities set forth herein, including the dissemination of false and misleading reports that fail to disclose the true source and intent of their information, also constitute violations of N.J.S.A. 2C:21-7(i).

164.   As part of their pattern of racketeering activities and in furtherance of and to assist their scheme and artifice to defraud Biovail, among others, the Camelback Defendants and Maris knowingly, willfully, and unlawfully engaged in commercial bribery and breach of duty to act disinterestedly in violation of N.J.S.A. 2C:21-10 by accepting and agreeing to accept certain benefits as consideration for violating or agreeing to violate their duties of fidelity to their clients, by participating in a scheme that put their clients at serious financial risk and resulted in substantial financial injury to their clients. As part of their pattern of racketeering activities and in furtherance of and to assist their scheme and artifice to defraud Biovail, among others, The S.A.C. Defendants knowingly, willfully and unlawfully engaged in commercial bribery in violation of N.J.S.A. 2C:21-10 by inducing other Enterprise members to accept and agree to accept certain benefits as consideration for violating or agreeing to violate their duties of fidelity as independent analysts for their clients.

76

165.    From at least 2003 and continuing to the present, the defendants repeatedly engaged in illegal acts under 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), N.J.S.A. 49:3-71, N.J.S.A. 2C:2-6, 15 U.S.C. §§ 78j and 78ff, and 17 C.F.R. § 240.10b-5 (relating to securities fraud), N.J.S.A. 2C:21-7 and 2C:2-6 (relating to deceptive business practices), and N.J.S.A. 2C:21-10 and 2C:2-6 (relating to commercial bribery), used the United States mails, as well as wire and other communications in interstate and foreign commerce in connection with these acts and thereby continually engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1)(B) and N.J.S.A. 2C:41-1(a)(2) and 2C:41-1(d) in the course of the described criminal schemes.

166.    The repeated violations by the defendants set forth herein extended over a period of years and involved distinct and independent criminal acts. They were neither isolated nor sporadic events, but involved the regular and repeated violation of law to accomplish the defendants' desired ends in the course of continuing the fraudulent business of the Enterprise.

167.    These acts were related to each other by virtue of (a) common participants; (b) common types of victims; and (c) the common purpose and common result of concerted attacks on companies through the creation and dissemination of false and misleading reports concerning their businesses and stock, resulting in vast trading profits for the Enterprise members at the expense of the target companies, their employees and shareholders.

168.    These repeated and continuing violations of N.J.S.A. 2C:41-1(a) and 2C:41-1(d) were neither isolated nor sporadic events, but involve a callous and calculated series of repeated violations of law in order to conceal and promote criminal activity in the course of the continuing business of the Enterprise. These activities therefore constitute a further component of a pattern

77

of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and N.J.S.A. 2C:41-1(a) and 2C:41-1(d).

169.    Each of the Camelback Defendants, S.A.C. Defendants, Gerson Lehrman Defendants, and Maris were, or were employed by, active participants in the Enterprise and all of them knowingly and intentionally violated or aided violations of N.J.S.A. 2C:41-2(c) by directly or indirectly conducting or participating in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.

170.    By the conduct, acts, and omissions set forth in detail above, each of the Camelback Defendants, S.A.C. Defendants, Gerson Lehrman Defendants, and Maris also aided and abetted the other Enterprise members in violating N.J.S.A. 2C:41-2(c).

171.    Each of the Camelback Defendants, S.A.C. Defendants, Gerson Lehrman Defendants, and Maris aided, abetted, counseled, induced, and procured the commission of the wrongful acts set forth above and may therefore be held liable as a principal, to the same extent as the other defendants.

172.    Each of the Camelback Defendants, S.A.C. Defendants, Gerson Lehrman Defendants and Maris were not merely reckless or negligent in their conduct. Each defendant engaged in the conduct, acts and omissions described above willfully and with actual knowledge of their illegality and actual purpose to the detriment of Biovail and other companies, their respective employees and shareholders.

173.    These violations of N.J.S.A. 2C:41-2(c) caused Biovail to suffer direct injury to its business and property through the billions of dollars in lost revenues, profit, enterprise value, and market capitalization that was caused by the methods and practices of the Enterprise

78

described herein. Biovail, therefore, is entitled to recover from the defendants the amount in which it has been damaged, to be trebled in accordance with N.J.S.A. 2C:41-4(c), together with interest and the costs of this suit, including reasonable attorneys' fees.

## COUNT II

### RACKETEERING (N.J.S.A. § 2C: 41-2(d))
### (AGAINST ALL DEFENDANTS)

174.   Biovail restates each and every allegation of paragraphs 1 through 173 as if fully set forth herein.

175.   Beginning in or about January 2003 and continuing until the present, each of the S.A.C. Defendants, Camelback Defendants, Gerson Lehrman Defendants, and Maris knowingly agreed to facilitate the scheme described herein to manage, operate, conduct, and participate in the conduct of the affairs of the Enterprise and conspired to do so within the meaning of N.J.S.A. 2C:5-2 through a pattern of racketeering activity within the meaning of N.J.S.A. 2C:41-2(d).

176.   Beginning in or about January 2003, each of the S.A.C. Defendants, Camelback Defendants, Gerson Lehrman Defendants, and Maris, being persons intimately involved in transactions carried on by and the affairs of the Enterprise -- which was engaged in, and the activities of which affected, trade and commerce -- unlawfully and willfully combined, conspired, confederated, and agreed with each other to violate N.J.S.A. 2C:41-2(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, through a pattern of racketeering activity, all in violation of N.J.S.A. 2C:41-2(d).

177.   Part of the conspiracy was that each of the S.A.C. Defendants, Camelback Defendants, Gerson Lehrman Defendants, and Maris personally committed or agreed to commit two or more fraudulent and illegal racketeering acts and conducted and agreed to conduct the

79

affairs of the Enterprise through the pattern of racketeering activity in violation of N.J.S.A.

2C:41-2(c) described above.

178.   In furtherance of the conspiracy and to effect the objects thereof, the S.A.C.

Defendants, Camelback Defendants, Gerson Lehrman Defendants, and Maris committed and

caused to be committed a series of overt acts, including:

- engaging in blatant manipulation of the market for the publicly-traded securities of Biovail and other companies;
- commissioning false, misleading, and ghost-written reports concerning Biovail and other companies;
- manipulating the issuance of such reports to benefit other Enterprise members and harm others to whom members of the Enterprise owed fiduciary and other duties;
- purchasing and/or selling securities in order to profit from the manipulated timing of the issuance of the fraudulent reports;
- charging Enterprise members and others substantial fees to receive the false and misleading information and reports that were created by Enterprise members;
- issuing analyst reports that falsely purported to be "independent" but were, in fact, premeditated attacks on a number of companies, including Biovail;
- fraudulently misrepresenting that Biovail shares were overvalued due to, among others things, corporate malfeasance, aggressive accounting, and criminal bribery by Biovail;
- planting false and misleading information concerning Biovail and other companies with securities analysts;
- rebroadcasting and disseminating that false and misleading information to the media and the public; and
- orchestrating false and misleading reports to the media by doctors paid by Enterprise members.

179.   These violations of N.J.S.A. 2C:41-2(d) caused Biovail to suffer direct injury to

its business and property through the billions of dollars in lost revenues, profit, enterprise value,

and market capitalization that was caused by the methods and practices of the Enterprise

described herein. Biovail, therefore, is entitled to recover from the defendants the amount in

which it has been damaged, to be trebled in accordance with N.J.S.A. 2C:41-4(c), together with interest and the costs of this suit, including reasonable attorneys' fees.

## COUNT III

### COMMERCIAL DISPARAGEMENT
### (AGAINST ALL DEFENDANTS)

180. Biovail restates each and every allegation of paragraphs 1 through 179 as if fully set forth herein.

181. As set forth herein, defendants knowingly and intentionally published false and injurious statements about plaintiffs' business and property, including plaintiffs' ability to operate their business and implement their strategic plan. Defendants' false and malicious statements attacked the plaintiffs' business fundamentals, their accounting, and their current and future products in analyst reports, newspaper articles, and internet message board postings that were both false and injurious.

182. Defendants communicated these falsehoods to third-parties and understood and intended that these false statements would have the effect of preventing others from doing business with the plaintiffs and interfering with the plaintiffs' business relationships.

183. As set forth herein, these injurious attacks on Biovail's business and products included:

- The S.A.C. Defendants' commissioning of false, misleading and ghost-written reports from the Camelback Defendants, for public dissemination;
- The S.A.C. Defendants' planting of false and misleading information and collaborating with Maris to disseminate that information;
- The Camelback Defendants' issuance of false and misleading reports;
- Maris's issuance of false and misleading reports;
- The dissemination of these false reports to media outlets by the defendants;

81

- The Gerson Lehrman Defendants' orchestration of false and misleading reports to the media by its paid doctors; and

- The defendants' dissemination and republication of those false and misleading reports in a direct attack on Biovail's product launches.

184.   Defendants' false statements directly harmed the plaintiffs' business in numerous

specific ways, including, without limitation:

- Harming plaintiffs' drug sales and new product launches by causing doctors to be unwilling to prescribe plaintiffs' products, including, specifically, a substantial decline in the sales of Cardizem LA as a result of defendants' false statements concerning the PLACE program and a substantial decline in the sales of Wellbutrin XL;

- Causing Reliant to withdraw from its agreement to co-promote newly-launched products, including Cardizem LA;

- Causing the Bank Syndicate to initially refuse to renew its financing of Biovail, and forcing Biovail to seek credit on far less favorable -- and far more costly -- terms; and

- Reducing plaintiffs' market capitalization by over $4 billion by causing existing investors to sell their shares in Biovail stock, and causing potential new investors to refrain from purchasing Biovail stock.

185.   Defendants' wrongful disparagement of Biovail's business and products in these

and other respects has caused many hundreds of millions of dollars in harm to Biovail.

## COUNT IV

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS (AGAINST ALL DEFENDANTS)

186.   Plaintiffs restate each and every allegation of paragraphs 1 through 185 as if fully

set forth herein.

187.   As set forth herein, Biovail had contracts and agreements with third-parties,

including, but not limited to: (a) Reliant; (b) the Bank Syndicate; (c) doctors taking part in the

PLACE program; (d) Biovail's bondholders; (e) Biovail employees; and (f) distributors and suppliers of Biovail's products.

188.    Each of the defendants knew of Biovail's contractual relationships with these third-parties.

189.    Defendants intentionally and maliciously interfered with Biovail's contracts with these third-parties by employing wrongful means that included unlawful securities market manipulation, mail and wire fraud and unlawful commercial bribery. This interference was committed intentionally and without justification or excuse and was carried out by, among other things:

- The S.A.C. Defendants' commissioning of false, misleading, and ghost-written reports from the Camelback Defendants, for public dissemination;
- The S.A.C. Defendants' planting of false and misleading information and collaborating with Maris to disseminate that information;
- The Camelback Defendants' issuance of false and misleading reports;
- Maris's issuance of false and misleading reports;
- The dissemination of these false reports to media outlets by the defendants;
- The Gerson Lehrman Defendants' orchestration of false and misleading reports to the media by its paid doctors; and
- The defendants' dissemination and republication of those false and misleading reports in a direct attack on Biovail's product launches.

190.    Each of the defendants was aware of, and intended to cause, the detrimental impact on Biovail's contractual relations that was caused by the defendants' respective actions.

191.    As a direct and proximate cause of defendants' intentional interference with Biovail's contractual relationships with third-parties, Biovail's contractual relationships were damaged, and Biovail suffered resulting monetary damages in an amount to be determined at trial.

## COUNT V

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (AGAINST ALL DEFENDANTS)

192.     Biovail restates each and every allegation of paragraphs 1 through 191 as if fully set forth herein.

193.     Biovail had business relationships and prospective business relationships with many third-parties, including, but not limited to: (a) Biovail shareholders and bondholders; (b) the Bank Syndicate and other actual and potential lenders; (c) Reliant; (d) other actual and potential co-promotion and marketing partners; (e) actual and potential distributors and suppliers of Biovail's products; and (f) owners and distributors of various drugs under consideration for acquisition by Biovail.

194.     Each of the defendants knew of Biovail's actual and potential contractual and business relationships with these third-parties.

195.     Defendants intentionally and maliciously interfered with Biovail's relationships with these third-parties by employing wrongful means that included unlawful securities market manipulation, mail and wire fraud, and unlawful commercial bribery. This interference was committed intentionally and without justification or excuse and was carried out by, among other things:

- The S.A.C. Defendants' commissioning of false, misleading, and ghost-written reports from the Camelback Defendants, for public dissemination;
- The S.A.C. Defendants' planting of false and misleading information and collaborating with Maris to disseminate that information;
- The Camelback Defendants' issuance of false and misleading reports;
- Maris's issuance of false and misleading reports;
- The dissemination of these false reports to media outlets by the defendants;

84

- The Gerson Lehrman Defendants' orchestration of false and misleading reports to the media by its paid doctors; and

- The defendants' dissemination and republication of those false and misleading reports in a direct attack on Biovail's product launches.

196.    Biovail had a reasonable expectation that each of the aforementioned business relationships would result in Biovail obtaining the benefits of these business opportunities. However, defendants' wrongful actions directly caused Biovail to lose or alter the business relationships described herein, to Biovail's economic detriment. Each of the defendants was aware of, and intended to cause, this detrimental impact on Biovail's prospective and actual contractual relations.

197.    As a direct and proximate cause of defendants' intentional interference with Biovail's actual and prospective contractual relationships with third-parties, Biovail's business relationships were damaged, and Biovail suffered resulting monetary damages in an amount to be determined at trial.

## COUNT VI

## COMMON LAW CIVIL CONSPIRACY
## (AGAINST ALL DEFENDANTS)

198.    Biovail restates each and every allegation of paragraphs 1 through 197 as if fully set forth herein.

199.    As set forth herein, each of the defendants, together with others, conspired with respect to Counts III through V and acted in concert to commit unlawful acts. Each of the defendants shared the same conspiratorial objective, which was to create and disseminate false and misleading statements and reports concerning the plaintiffs' business, with the goals of harming the plaintiffs' business and profiting from that harm through improper and unlawful

85

trading in Biovail securities. Each of the defendants understood the objectives of the scheme, accepted them, and was an active and knowing participant in the scheme.

200. The defendants' conspiratorial scheme was carried out by the commission of the wrongful and overt acts set forth above, including:

- The S.A.C. Defendants' commissioning of false, misleading, and ghost-written reports from the Camelback Defendants, for public dissemination;

- The S.A.C. Defendants' planting of false and misleading information and collaborating with Maris to disseminate that information;

- The Camelback Defendants' issuance of false and misleading reports;

- Maris's issuance of false and misleading reports;

- The dissemination of these false reports to media outlets by the defendants;

- The Gerson Lehrman Defendants' orchestration of false and misleading reports to the media by its paid doctors; and

- The defendants' dissemination and republication of those false and misleading reports in a direct attack on Biovail's product launches.

201. As a direct, proximate result of the operation and execution of the conspiracy, Biovail has been injured and suffered damages in an amount to be proven at trial.

202. At all relevant times, the defendants' conduct was willful and done with legal malice and knowledge that it was wrongful.

## DEMAND FOR JURY TRIAL

203. Demand is hereby made for a trial by jury for all issues so triable.

WHEREFORE, Plaintiffs demand judgment:

(a) Awarding plaintiffs compensatory damages in amounts to be determined at trial, together with interest, attorneys' fees, costs and disbursements;

86

(b)     Awarding plaintiffs punitive and exemplary damages in amounts to be determined at trial;

(c)     Awarding plaintiffs treble damages, costs of suit, attorney's fees and costs of litigation under N.J.S.A. 2C:41-4(c), in amounts to be determined at trial;

(d)     Awarding plaintiffs injunctive relief preventing defendants from engaging in continued wrongful activity, as set forth herein, in the form that the Court may determine is just and proper;

(e)     Prejudgment and post-judgment interest; and

(f)     Such other and further relief as is just and proper.

Dated: February 22, 2006

Respectfully submitted,

NAGEL RICE & MAZIE, LLP

By: _____
        Bruce H. Nagel, Esq.
        Jay J. Rice, Esq.
        103 Eisenhower Parkway
        Roseland, New Jersey 07068

        and

        Marc E. Kasowitz, Esq.
        Daniel R. Benson, Esq.
        Michael J. Bowe, Esq.
        KASOWITZ, BENSON, TORRES
            & FRIEDMAN LLP
        1633 Broadway
        New York, New York 10019
        (212) 506-1700

        ATTORNEYS FOR PLAINTIFFS

87

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Plaintiffs designate Bruce H. Nagel, Esq. as trial counsel in this

matter.

NAGEL RICE & MAZIE, LLP
Attorneys for Plaintiffs

By: _____
Bruce H. Nagel, Esq.
Jay J. Rice, Esq.

Dated: February 22, 2006

88

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues so triable.

NAGEL RICE & MAZIE, LLP
Attorneys for Plaintiffs

By: _____
        Bruce H. Nagel, Esq.
        Jay J. Rice, Esq.

Dated: February 22, 2006

## RULE 4:5-1 CERTIFICATION

Plaintiffs, by their attorneys, hereby certify that the matter in controversy is or may be the subject of other pending judicial proceedings as set forth below. Plaintiffs do not believe that of the parties in the other pending judicial proceedings should be joined in this action.

1.    In re Biovail Corporation Securities Litigation, No. 03-8917 (RO), U.S. District Court for the Southern District of New York. The parties in the action are:

    a)  Houston Municipal Employees Pension System
    b)  Local 282 Welfare Trust Fund
    c)  Ontario Teachers' Pension Plan Board
    d)  Vera A. Hays
    e)  Brian Felgoise
    f)  Mark Newby
    g)  David Welsh
    h)  Douglas Sobel
    i)  Ling Shi
    j)  Wayne Bruce Abrahamson
    k)  S.D. Gokhale
    l)  Jim L. Pierce
    m)  William A. Emery
    n)  Paul H. Wojciechowski
    o)  William C. Rand
    p)  Biovail Corporation
    q)  Eugene N. Melnyk
    r)  Rolf K. Reininghaus
    s)  Brian H. Crombie
    t)  Kenneth G. Howling
    u)  John R. Miszuk

2.    Treppel v. Biovail et al., No. 03-3002 (PKL), U.S. District Court for the Southern District of New York. The parties in the action are Jerry I. Treppel, Biovail Corporation and Eugene I. Melnyk.

NAGEL RICE & MAZIE, LLP
Attorneys for Plaintiffs

By: _____
    Bruce H. Nagel, Esq.
    Jay L. Rice, Esq.

Dated: February 22, 2006

90

# CIVIL CASE INFORMATION STATEMENT
## (CIS)



Use for initial Law Division – Civil Part pleadings (not motions) under Rule 4:5-1.
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE:   CK   CG   CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

**ATTORNEY/PRO SE NAME**
Bruce H. Nagel/Jay J. Rice

**TELEPHONE NUMBER**
(973) 618-0400

**COUNTY OF VENUE**
Essex County

**FIRM NAME (If applicable)**
Nagel, Rice & Mazie, LLP

**DOCKET NUMBER (When available)**

**OFFICE ADDRESS**
103 Eisenhower Parkway
Roseland, NJ 07068

**DOCUMENT TYPE**
COMPLAINT

**JURY DEMAND**   ✓ YES   ☐ NO

**NAME OF PARTY (e.g., John Doe, Plaintiff)**
BIOVAIL CORPORATION & BIOVAIL PHARMACEUTICALS, INC.

**CAPTION**
BIOVAIL CORPORATION & BIOVAIL PHARMACEUTICALS, INC. V. S.A.C. CAPITAL et. al.

**CASE TYPE NUMBER** (See reverse side for listing)  508

IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ✓ NO
IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

**RELATED CASES PENDING?**  ✓ YES  ☐ NO

**IF YES, LIST DOCKET NUMBERS**
In re Biovail Securities Litigation, No. 03-8917 (RO) (S.D.N.Y)
Treppel v. Biovail, No. 03-3002 (PKL) (S.D.N.Y.)

**DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?**  ☐ YES  ✓ NO

**NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN**
☐ NONE  ✓ UNKNOWN

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?**  ☐ YES  ✓ NO

IF YES, IS THAT RELATIONSHIP:  ☐ EMPLOYER-EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)  ☐ FAMILIAL  ☐ BUSINESS

**B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?**  ☐ YES  ✓ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

FEB 2 2 2006

**DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?**  ☐ YES  ✓ NO
IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION:

**WILL AN INTERPRETER BE NEEDED?**  ☐ YES  ✓ NO
IF YES, FOR WHAT LANGUAGE:

**ATTORNEY SIGNATURE:**

Revised effective 4/1/05

**SIDE 2**  CIVIL CASE INFORMATION STATEMENT
(CIS)
Use for initial pleadings (not motions) under *Rule 4:5-1*

CASE TYPES (Choose one and enter number of case type in appropriate space on the reverse side.)

Track I — 150 days' discovery
151   NAME CHANGE
175   FORFEITURE
302   TENANCY
399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502   BOOK ACCOUNT
505   OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
506   PIP COVERAGE
510   UM or UIM CLAIM
511   ACTION ON NEGOTIABLE INSTRUMENT
512   LEMON LAW
599   CONTRACT/COMMERCIAL TRANSACTION
801   SUMMARY ACTION
802   OPEN PUBLIC RECORDS ACT (SUMMARY ACTION)

Track II — 300 days' discovery
305   CONSTRUCTION
509   EMPLOYMENT (other than CEPA or LAD)
602   ASSAULT AND BATTERY
603   AUTO NEGLIGENCE – PERSONAL INJURY
605   PERSONAL INJURY
610   AUTO NEGLIGENCE – PROPERTY DAMAGE
699   TORT – OTHER

Track III — 450 days' discovery
005   CIVIL RIGHTS
301   CONDEMNATION
604   MEDICAL MALPRACTICE
606   PRODUCT LIABILITY
607   PROFESSIONAL MALPRACTICE
608   TOXIC TORT
609   DEFAMATION
616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617   INVERSE CONDEMNATION
618   LAW AGAINST DISCRIMINATION (LAD) CASES

Track IV — Active Case Management by Individual Judge / 450 days' discovery
156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303   MT. LAUREL
508   COMPLEX COMMERCIAL
701   ACTIONS IN LIEU OF PREROGATIVE WRITS

Mass Tort (Track IV)
240   REDUX/PHEN-FEN (formerly "DIET DRUG")      601 ASBESTOS
248   CIBA GEIGY                                  619 VIOXX
264   PPA

999 OTHER (Briefly describe nature of action) _____

_____

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics."

Please check off each applicable category:
☐ Verbal Threshold        ☐ Putative Class Action        ☐ Title 59

Revised effective 4/1/05