Anthony Marchetta (AM 7718)
PITNEY HARDIN LLP
200 Campus Drive
Florham Park, NJ  07932
Telephone:   (973) 966-6300
Facsimile:    (973) 966-1015
        -and-
Yosef J. Riemer
Galia Messika
Shira Schlaff
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
*Attorneys for Defendants Thomas Lehrman and James Lyle*

**UNITED STATES DISTRICT COURT OF NEW JERSEY**

| | | |
|---|---|---|
| **BIOVAIL CORPORATION and** **BIOVAIL PHARMACEUTICALS, INC.,** | : : : | Hon. Harold A. Ackerman, U.S.D.J. Civil Action No. 06-1625 (HAA) |
| **Plaintiffs,** | : : : : | |
| **- against -** | : : | |
| **S.A.C. CAPITAL MANAGEMENT, LLC,** **S.A.C. CAPITAL ADVISORS, LLC,** **S.A.C. CAPITAL ASSOCIATES, LLC,** **S.A.C. HEALTHCO FUNDS, LLC, SIGMA** **CAPITAL MANAGEMENT, LLC, STEVEN A.** **COHEN, ARTHUR COHEN, JOSEPH** **HEALEY, TIMOTHY MCCARTHY, DAVID** **MARIS, GRADIENT ANALYTICS, INC.,** **CAMELBACK RESEARCH ALLIANCE, INC.,** **JAMES CARR BETTIS, DONN VICKREY,** **PINNACLE INVESTMENT ADVISORS, LLC,** **HELIOS EQUITY FUND, LLC, HALLMARK** **FUNDS, GERSON LEHRMAN GROUP,** **GERSON LEHRMAN GROUP BROKERAGE** **SERVICES, LLC, THOMAS LEHRMAN,** **PATRICK DUFF, JAMES LYLE, AND DOES 1** **THROUGH 50,** **Defendants.** | : : : : : : : : : : : : : : : : : | **THOMAS LEHRMAN'S AND** **JAMES LYLE'S REPLY BRIEF IN** **FURTHER SUPPORT OF THEIR** **MOTIONS TO DISMISS FOR LACK** **OF PERSONAL JURISDICTION** |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................. 1

I.      LEGAL STANDARD -- PLAINTIFFS BEAR THE BURDEN TO SHOW THAT
        PERSONAL JURISDICTION OVER LYLE AND LEHRMAN IS PROPER ................. 6

II.     PLAINTIFFS' NEW JERSEY CAUSES OF ACTIONS DO NOT ALLOW FOR
        NATIONWIDE SERVICE AND REMOVING THE ACTION TO FEDERAL
        COURT DID NOT CHANGE THAT FACT ....................................................... 9

III.    NONE OF THE NEW JERSEY "CONTACTS" CITED BY PLAINTIFFS
        SUPPORT PERSONAL JURISDICTION OVER LYLE AND LEHRMAN ................. 12

        A.      GLG's Contacts With New Jersey Are Irrelevant To The Determination
                Of Personal Jurisdiction Over Its Directors, Lyle And Lehrman .......................... 12

                1.      Lyle's And Lehrman's Contacts With New Jersey In Their
                        Corporate Capacities With GLG Should Not Be Considered For A
                        Jurisdictional Analysis, And, In Any Event, Lyle And Lehrman
                        Had No Contacts With New Jersey In That Capacity ................................ 14

        B.      The "Effects" Test Does Not Subject Lyle And Lehrman To Specific
                Jurisdiction .......................................................................................... 18

                1.      Other Companies Located In New Jersey Do Not Satisfy The
                        Effects Test ........................................................................... 22

        C.      New Jersey Courts Have Not Recognized The Conspiracy Theory Of
                Jurisdiction, Which, As Many Other Courts Have Held, Is
                Unconstitutional.  In Any Event, Plaintiffs Have Failed To Make The
                Factual Showing Required In The Jurisdictions That Do Recognize The
                Theory .................................................................................................. 23

                1.      The Law On The Conspiracy Theory Of Jurisdiction Is Unsettled
                        In New Jersey And Has Been Rejected As Unconstitutional By
                        Many Other Jurisdictions ........................................................... 23

                2.      Plaintiffs Cannot Meet The Strict Requirements Imposed By The
                        Jurisdictions That Do Accept The Conspiracy Theory Of
                        Jurisdiction .......................................................................... 27

                        (a)      Plaintiffs Have Not Made A *Prima Facie* Factual Showing Of A
                                 Conspiracy, Of Which Lehrman Or Lyle Were Members ............ 29

i

(b)    Plaintiffs Have Failed To Show That Lyle Or Lehrman Knew Or Had Reason To Know That The Conspiracy Would Have An Effect In New Jersey ................................................................ 33

IV.    JURISDICTIONAL DISCOVERY SHOULD BE DENIED IN THIS CASE OR, IN THE ALTERNATIVE, SHOULD BE LIMITED ........................................ 34

    A.    Jurisdictional Discovery Should Be Denied In This Case ...................................... 34

    B.    If Jurisdictional Discovery Is Granted, It Should Be Strictly Limited ................. 38

        1.    Discovery Should Be Limited In Scope .................................................... 38

        2.    Discovery Should Be Limited In Duration ................................................ 39

CONCLUSION ............................................................................................... 40

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*A.J. Curtis & Co. v. D. W. Falls, Inc.,*
   305 F.2d 811 (3d Cir. 1962) ....................................................................2, 10

*Aceton Inc. v. Vista Dental Products,*
   No. 05-3847, 2006 U.S. Dist. LEXIS 27584 (D.N.J. May 3, 2006)..........................7

*Albert v. Biovail,*
   Civ. A. No. 04-1713 (D.N.J.) ..............................................................................20

*Allen v. Columbia Fin. Mgmt., Ltd.,*
   297 S.C. 481 (S.C. App. 1988).............................................................................26

*Am. Centennial Ins. v. Handal,*
   901 F. Supp. 892 (D.N.J. 1995)............................................................................35

*American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.,*
   710 F.2d 1449 (10th Cir. 1983) ............................................................................30

*Amoroso v. Burdette Tomlin Mem'l Hosp.,*
   901 F. Supp. 900 (D.N.J. 1995)............................................................................18

*Arch v. American Tobacco Co., Inc.,*
   984 F. Supp. 830 (E.D. Pa. 1997).........................................................................36

*Arizona v. Manypenny,*
   451 U.S. 232 (1981) ............................................................................................10

*Bank Express Int'l v. Kang,*
   265 F. Supp. 2d 497 (E.D. Pa. 2003).....................................................................35

*Bankers Life & Casualty Co. v. Holland,*
   346 U.S. 379 (1953) ............................................................................................25

*Barrett v. Catacombs Press,*
   44 F. Supp. 2d 717 (E.D. Pa. 1999).................................................................21, 22

*Base Metal Trading Ltd. v. OJSC Novokuznetsky Aluminum Factory,*
   47 Fed. Appx. 73 (3d Cir. Sept. 5, 2002) ..............................................................36

*Brown v. AST Sports Science, Inc.,*
   No. Civ. A 02-1682, 2002 WL 32345935 (E.D. Pa. Jun. 28, 2002).........................10

*Calder v. Jones,*
    465 U.S. 783 (1984) ..................................................................................................passim

*Capone v. Nadig,*
    963 F. Supp. 409 (D.N.J. 1997)........................................................................................18

*Carteret, Sov. Bank, F.A. v. Shusan,*
    954 F.2d 141 (3d Cir. 1992) ..............................................................................................23

*Chrysler Corp. v. Fedders Corp.,*
    643 F.2d 1229 (6th Cir. 1981) ..........................................................................................31

*City of St. Louis v. American Tobacco Co.,*
    Case No. 982-09652, 2003 WL 23277277 (Mo. Cir. Dec. 16, 2003) ...................................26

*Delta Brands Inc. v. Danieli Corp.,*
    No. 03-11052, 99 Fed. Appx. 1 (5th Cir. May 5, 2004)...................................................25, 31

*Digiralomo v. Shop at Home, Inc.,*
    No. Civ. 01-CV-4001, 2002 WL 576024 (D.N.J. Mar. 1, 2002) .............................................14

*Dluhos v. Strasberg,*
    No. 00-3163, 2005 U.S. Dist. LEXIS 34385 (D.N.J. Jun. 23, 2005) ...................................8, 35

*Edmond v. U.S. Postal Serv. Gen Counsel,*
    949 F.2d 415 (D.C. Cir. 1992)..........................................................................................31

*Educational Testing Serv. v. Katzman,*
    631 F. Supp. 550 (D.N.J. 1986).........................................................................................14

*First Capital Asset Mgmt, Inc. v. Brickellbush, Inc.,*
    218 F. Supp. 2d 369 (S.D.N.Y. 2002) ..................................................................................29

*Foley v. Marquez,*
    No. C 03-2481, 2004 WL 603566 (N.D. Cal. Mar. 22, 2004) ...............................................26

*Forbes. v. Eagleson,*
    No. Civ. A. 95-7021, 1996 WL 420829 (E.D. Pa. Jul. 23, 1996) ...........................................40

*Forum Publ'ns, Inc. v. P.T. Publishers, Inc.,*
    700 F. Supp. 236 (E.D. Pa. 1988)......................................................................................19

*Fritsch v. F/V Anna Marie,*
    Civ. No. 05-3495 (JBS), 2006 WL 995411 (D.N.J. Apr. 11, 2006).........................................35

*Genesis Intern. Holdings Int'l Infrastructure Consortium v. US-Algeria Business Council,*
    No. 05 CV 4487, 2006 WL 1128729 (D.N.J. Apr. 27, 2006) ...............................................20

iv

*Glaros v. Perse*,
　628 F.2d 679 (1st Cir. 1980)...................................................................26

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manuf'g*,
　125 S. Ct. 2363 (2005).........................................................................9

*Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*,
　988 F.2d 476 (3d Cir. 1993)................................................................23

*Grinman v. Slots-A-Fun Casino*,
　No. 92-2886, 1993 U.S. Dist. LEXIS 2873 (D.N.J. Sep. 13, 1993).........................8

*Grove Press, Inc. v. Angleton*,
　649 F.2d 122 (2d Cir. 1980)................................................................29

*Hansen v. Neumeuller GmbH*,
　163 F.R.D. 471 (D. Del. 1995)..............................................................36

*Harrison v. L.P. Rock Corp.*,
　No. Civ. A. 99-CV-5886, 2000 WL 19257 (E.D. Pa. Jan. 7, 2000)........................10

*Hawkins v. Upjohn Co.*,
　890 F. Supp. 601 (E.D. Tex. 1994).........................................................25

*Heinfling v. Colapinto*,
　946 F. Supp. 260 (S.D.N.Y 1996) ..........................................................29

*Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*,
　611 A.2d 476 (Del. 1991)...................................................................28

*Hewitt v. Hewitt*,
　78 Wash. App. 447 (Wa. Ct. App. 1995) ...................................................26

*Hollar v. Philip Morris Inc.*,
　43 F. Supp. 2d 794 (N.D. Ohio 1998) ......................................................26

*IMO Industries, Inc. v. Kiekert AG*,
　155 F.3d 254 (3d Cir. 1998) ...........................................................19, 21

*In re Lernout & Hauspie Sec. Litig.*,
　No. Civ. A. 00-115890, 2004 WL 1490435 (D. Mass. Jun. 28, 2004)....................27

*In re New Motors Vehicles Canadian Export Antitrust Litig.*,
　307 F. Supp. 2d 145 (D. Maine 2004, *amended by*, 2004 WL 1571617 (2004) ..........27

*In re Publication Paper Antitrust Litigation*,
　No. 304M01631 SRU, 2005 WL 2175139 (D. Conn. Sep. 7, 2005)......................40

*Insolia v. Philip Morris Inc.*,
    31 F. Supp. 2d 660 (W.D. Wis. 1998) ........................................................................26

*Instituto Bancario Italiano, SpA v. Hunter Eng'g Co.*,
    449 A.2d 210  (Del. 1982) ...............................................................................28, 29

*Intern'l Shoe Co. v. State of Wash.*,
    326 U.S. 310 (1945) ........................................................................................28

*Itoba Ltd v. LEP Group Plc*,
    930 F. Supp. 36 (D. Conn. 1996).....................................................................16, 17

*Johns v. U.S.P.S*,
    593 F. Supp. 398 (W.D. Pa. 1984) .......................................................................10

*Kane Commc'ns, Inc. v. Klombers*,
    No. Civ. A. 87-6594, 1988 WL 26462 (E.D. Pa. Mar. 10, 1988) ...........................19

*Karibjanian v. Thomas Jefferson Univ. Hosp.*,
    No. Civ. A. 89-1891, 1990 WL 6131 (E.D. Pa. Jan. 25, 1990)................................36

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ........................................................................................14

*Kipperman v. McCone*,
    422 F. Supp. 860 (N.D. Cal. 1976).....................................................................26

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    26 F. Supp. 2d 593 (S.D.N.Y. 1998) ...................................................................30

*Labs, Inc. v. X-Rayworld.com, Inc.*,
    No. Civ. A. 03-211, 2003 WL 21715872 (D. Del. Jul. 24, 2003) ............................39

*Lautman v. The Loewen Group, Inc.*,
    Civ. Act. No. 99-75, 2000 U.S. Dist. LEXIS 8241 (E.D. Pa. Jun. 15, 2000)....................15, 16

*Lewis-Ugdah v. HBE Corp.*,
    No. Civ. A. 00-3884, 2000 WL 1780233 (E.D. Pa. Dec. 1, 2000)..........................10

*Machulsky v. Hall*,
    210 F. Supp. 2d 531 (D.N.J. 2002).....................................................................8, 21

*Mandaglio v. United Brotherhood of Carpenters & Joiners of America.*,
    528 F. Supp. 468 (E.D.N.Y. 1981) ......................................................................29, 30

*Mansour v. Super. Ct. of Orange County*,
    38 Cal. App. 4th 1750, 1760-1 (Cal. Ct. App. 1995) .............................................25

*Massachusetts School of Law v. American Bar Association,*
    107 F.3d 1026 (1997) .................................................................................................37

*Matsumoto v. Matsumoto,*
    762 A.2d 224 (N.J. Super. Ct. App. Div. 2000), *affirmed as modified* by 792 A2d
    1222 (2002).................................................................................................................24

*McLaughlin v. Copeland,*
    435 F. Supp 513 (D. Md. 1977).............................................................................5, 31

*Mellon Bank (East) PSFS, National Association v. Farino,*
    960 F.2d 1217 (3d Cir. 1992) .....................................................................................8

*Miller Yacht Sales, Inc. v. Smith,*
    384 F.3d 93 (3d Cir. 2004) .........................................................................................5

*Molnlycke Health Care AB v. Dumex Medical Surgical Prods. Ltd.,*
    64 F. Supp. 2d 448 (E.D. Pa. 1999).........................................................................34

*Morris & Co. v. Skandinavia Ins.e Co.,*
    279 U.S. 405 (1929) ..................................................................................................10

*N. Penn. Gas. Co. v. Corning Nat'l Gas Corp.,*
    897 F.2d 687 (3d Cir. 1990) .....................................................................................35

*Nat'l Indus. Sand Ass'n v. Gibson,*
    897 S.W.2d 769 (Tex. 1995) .....................................................................................25

*Nehemiah v. Athletics Congress of the USA,*
    765 F.2d 42 (3d Cir. 1985) ..................................................................................38, 39

*Nicholas v. Stone,*
    Civ. No. 97-860, 1998 U.S. Dist. LEXIS 22977 (D.N.J. Jun. 30, 1998)................16

*Norben Import Corp. v. Metropolitan Plant & Flower Corp.,*
    No. Civ. A. 05-54, 2005 U.S. Dist. LEXIS 34386 (D.N.J. Jul. 15, 2005)................3

*Oeschle v. Pro-Tech Power, Inc.,*
    No. Civ. A. 03-CV-6875, 2006 WL 680908 (E.D. Pa. Mar. 15, 2006)...................40

*Parker v. Learn the Skills Corp.,*
    No. Civ. A. 05-2752, 2006 WL 759693 (E.D. Pa. Mar. 23, 2006) ........................35

*Phoenix Eng'g & Supply, Inc. v. Amelco, Inc.,*
    No. 93-2035, 1994 U.S. Dist. LEXIS 3043 (D.N.J. Mar. 14, 1994) ........................8

*Pinker v. Roche Holdings, Ltd,*
    292 F.3d 361 (3d Cir. 2002) .....................................................................................11

vii

*Poe v. Babcock Int'l,*
   662 F. Supp. 4 (M.D. Pa. 1985) ..................................................................................... 35

*Renner v. Lanard Toys Ltd.,*
   33 F.3d 277 (3d Cir. 1994) ............................................................................................ 37

*Rittenhouse v. Dollars & Sense, Inc.,*
   No. Civ. A. 83-5996, 1987 U.S. Dist. LEXIS 3061, (E.D. Pa. Apr. 15, 1987) ............... 16, 19

*Rose v. Granite City Police Dep't,*
   813 F. Supp. 319 (E.D. Pa. 1993) ................................................................................. 35

*Rotothem Corp. v. Penn Linen & Uniform Serv., Inc.,*
   No. 96-6544, 1997 U.S. Dist LEXIS 10057 (E.D. Pa. Jul. 3, 1997) .............................. 16

*Royal Gist-Brocades N.V. v. Sierra Prods. Ltd.,*
   No. Civ. A .97-1147, 1997 WL 792905 (E.D. Pa. Dec. 22. 1997) ................................. 40

*Rush v. Savchuk,*
   444 U.S. 320 (1980) ............................................................................................. 24, 25, 27

*Schwartz v. Comcast Corp.,*
   No. Civ. A. 05-2340, 2005 WL 1799414 (E.D. Pa. Jul. 28, 2005) ................................ 39

*Schwartz v. Frankenhoff,*
   733 A.2d 74 (Vt. 1999) ................................................................................................. 26

*Shaw v. Boyd,*
   658 F. Supp. 89 (E.D. Pa. 1987) ................................................................................... 37

*Shulton, Inc. v. Optel Corp.,*
   No. 85-2925, 1986 WL 15617 (D.N.J. Sep. 29, 1986) .................................................. 11

*Simkins Corp. v. Gourmet Resources Int'l, Inc.,*
   601 F. Supp. 1336 (E.D. Pa. 1985) ............................................................................... 16

*Smith v. S & S Dundalk Eng'g Works, Ltd.,*
   139 F. Supp. 2d 610 (D.N.J. 2001) ............................................................................... 35

*Southern Ocean Seafood Co. v. Holt Cargo Syst.,*
   No. Civ. A. 96-5217, 1997 WL 539763 (E.D. Pa. Aug. 11, 1997) ................................ 35

*State of Minnesota v. U.S.,*
   305 U.S. 382 (1939) ...................................................................................................... 10

*Steinke v. Safeco Ins. Co. of America,*
   270 F. Supp. 2d 1196 (D. Mont. 2003) ......................................................................... 27

*Stranahan Gear Co. Inc. v. NL Industries, Inc.*,
   800 F.2d 53 (3d Cir. 1986) ...........................................................................8

*Strauss v. Tutletaub*,
   No. 04-5128, 2006 U.S. Dist. LEXIS 1323 (D.N.J. Jan 13, 2006)...........................8

*Telcordia Tecs., Inv. v. Alcatel S.A.*,
   No. Civ. A. 04-874 GMS, 2005 WL 1268061 (D. Del. May 27, 2005)..................36

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
   735 F.2d 61 (3d Cir. 1984) ........................................................................2, 7

*Toys "R" Us v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003) ........................................................................37

**Statutes**

15 U.S.C § 78j(b)...........................................................................................11

15 U.S.C. § 78aa ......................................................................................11, 12

18 U.S.C. § 1961, *et seq.* ..............................................................................11

18 U.S.C. § 1965(b)....................................................................................11, 12

**Other Authorities**

4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure,
   § 1069.5 (3d ed. 2006)................................................................................30

Stuart M. Riback, *The Long Arm And Multiple Defendants: The Conspiracy Theory of In
Personam Jurisdiction*,
   84 Colum. L. Rev. 506 (1984)........................................................................27

**Rules**

Fed. R. Civ. P. 10b-5 .....................................................................................11

Fed. R. Civ. P. 12(b)(2) .................................................................................7, 8

Fed. R. Civ. P. Rule 26 ..................................................................................39

ix

## INTRODUCTION

Although plaintiffs filed opposition papers, an attorney's 24-page supporting affidavit (Albert Shemmy Mishaan Affidavit, ("Mishaan Aff.")) and 45 exhibits in response to Lyle's and Lehrman's motions to dismiss -- there is nothing in those papers that refutes Lehrman's and Lyle's declarations that they had no contacts with New Jersey that would subject them to personal jurisdiction there. Plaintiffs have presented no actual proof in the form of affidavits or competent evidence that controverts Lehrman's and Lyle's declarations that they have:

- never lived in New Jersey;
- never been employed in New Jersey;
- never owned real estate or other property in New Jersey;
- never been required to file a personal tax return in New Jersey;
- never had a New Jersey bank account;
- never had a New Jersey phone number;
- do not transact business in New Jersey continuously or systematically; and
- were not involved in any way, and had no knowledge about, the alleged conspiracy to drive down Biovail's stock price.

Instead, plaintiffs restate the same conclusory allegations contained in their Complaint, and assert without any factual or pertinent legal support that if permitted discovery, they might be able to show that Lyle's and Lehrman's declarations are untrue. Rather than asking the Court to allow them to take narrowly focused discovery on jurisdiction for a limited period, plaintiffs ask the Court to permit them to take whatever discovery they want on both the merits and jurisdiction for the life of the case. Plaintiffs' desire to put off until the eve of trial the determination of whether Lyle and Lehrman are subject to jurisdiction in New Jersey would subject Lyle and Lehrman to protracted, unwarranted and costly discovery, yet plaintiffs argue that such an approach is "the logical and efficient way to proceed." (Opp. Br. at 32).

Plaintiffs' response turns on its head the basic premise of jurisdictional motions, namely that it is plaintiffs' burden to make a *prima facie* showing of jurisdiction over the defendants (*see*

Section I, *infra*). Plaintiffs would have this Court deny the motions "only if it appears that [plaintiffs] could prove no set of facts that would entitle [them] to relief" (Opp. Br. at 33), but that standard is inapplicable when a motion to dismiss is made on jurisdictional grounds. As held in the seminal Third Circuit case, *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984), "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." (citation omitted)  "[M]ere affidavits which parrot and do no more than restate plaintiff's allegations without identification of particular defendants and without factual content do not end the inquiry." *Id.* Because plaintiffs have failed to present any actual evidence of Lyle's and Lehrman's minimum contacts with New Jersey -- as opposed to parroting the same conclusory allegations found in the Complaint -- this Court should dismiss the Complaint against Lyle and Lehrman for lack of personal jurisdiction over them.

Moreover, none of the legal arguments or alleged "contacts" with the forum, which plaintiffs advance in support of finding personal jurisdiction over Lyle and Lehrman (or allowing unlimited discovery), is persuasive. First, plaintiffs' argument that by removing the case to federal court, Lyle and Lehrman somehow subjected themselves to nationwide service and jurisdiction under the federal RICO and federal securities law is simply absurd. As detailed in Section II, *infra*, the jurisdiction of a federal court on removal is "derivative. Where the state court lacks jurisdiction of the...parties, the federal court acquires none, although in a like suit originally brought in a federal court it would have had jurisdiction." *A.J. Curtis & Co. v. D. W. Falls, Inc.*, 305 F.2d 811, 814 (3d Cir. 1962) (citation omitted). Here, regardless of whether the resolution of plaintiffs' claims requires the resolution of federal questions implicated by those

2

claims, the claims themselves are state law claims under New Jersey state law (which does not provide for nationwide service and jurisdiction), and not under the federal RICO statute or federal securities laws (which do). The removal of state law claims to federal court did not miraculously transform those causes of actions into federal ones, nor did it waive any of the jurisdictional defenses that would have been available to Lyle and Lehrman had the case not been removed. In short, the nationwide service provisions of the federal RICO and securities statutes have no relevance to this action.

Second, plaintiffs' argument that Gerson Lehrman Group, Inc.'s ("GLG") contacts with New Jersey are relevant to the analysis of whether Lyle and Lehrman are subject to personal jurisdiction in New Jersey -- is wrong as a matter of law. Plaintiffs dedicate many pages and exhibits to showing that GLG has contacts with New Jersey (Opp. Br. at 34-41, Pls. Exs. 4, 12, 29-44) and that discovery on GLG's contacts with New Jersey "would be relevant to establishing the minimum contacts of Lyle and Lehrman, both of whom are affiliates of Gerson Lehrman." (Mishaan Aff. ¶ 19). But as detailed in Section III.A, *infra*, any contacts between GLG and New Jersey are wholly irrelevant to the issue of whether personal jurisdiction exists over Lyle and Lehrman. "[P]ersonal jurisdiction does not exist over a corporate officer simply because the corporate entity itself may be amenable to personal jurisdiction in the forum state." *Norben Import Corp. v. Metropolitan Plant & Flower Corp.*, No. Civ. A. 05-54, 2005 U.S. Dist. LEXIS 34386, at *13 (D.N.J. Jul. 15, 2005). As for Lyle's and Lehrman's contacts with New Jersey in their corporate capacity, "[a]s a general rule, an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity." *Id.* In any event, plaintiffs point to no such contacts, and Lyle's and Lehrman's supplemental declarations make clear that they have not participated in any meetings or

conferences in New Jersey or made any visits to New Jersey in their capacities as directors of GLG. (Supplemental Declaration of James Lyle ("Lyle Suppl. Decl.") ¶ 1; Supplemental Declaration of Thomas Lehrman ("Lehrman Suppl. Decl.") ¶ 8).

Third, plaintiffs' argument that Lyle and Lehrman can be subjected to jurisdiction in New Jersey because plaintiffs allege that they somehow caused harm to Biovail's subsidiary company, Biovail Pharmaceuticals, Inc. ("BPI"), in New Jersey, is perhaps the most misleading argument of all. As described in the opening papers, the only allegations in the Complaint that are related in any way to any of the Gerson Lehrman Defendants are those concerning *The Wall Street Journal* and *Barron's* articles that were published in July 2003. (*See, e.g.*, Compl. ¶ 69). Although Plaintiffs would now have this Court believe that in July 2003, BPI was based in New Jersey, they previously admitted in another action that BPI had not yet moved to its principal office in New Jersey at that time. In the words of the certification Biovail filed in that case: "BPI had its principal office in North Carolina until November 2003, when its principal office was relocated to Bridgewater, New Jersey." (*See* Section III.B, *infra*). Thus, in July 2003, when the articles at issue were published, BPI's principal office was still located in North Carolina. Ironically, Biovail filed that certification in support of a motion it filed when it sought to be dismissed as a defendant from an action in New Jersey on jurisdictional grounds. Plaintiffs' current argument alleging that BPI suffered harm in New Jersey in July 2003 cannot be reconciled with the admission in that litigation.

Fourth, as discussed in Section III.C, *infra*, the conspiracy theory of jurisdiction advocated by plaintiffs cannot provide a basis for finding jurisdiction over Lyle and Lehrman. The conspiracy theory of jurisdiction attributes the contacts of a co-conspirator who committed an act in furtherance of the conspiracy in the forum to its non-resident co-conspirator. Although

4

plaintiffs would have this Court believe that it is "well-settled" that New Jersey has recognized the conspiracy theory of jurisdiction (Opp. Br. at 45), the Third Circuit has rejected that view of New Jersey law; as the Third Circuit noted in a recent decision, "it is unclear whether New Jersey even recognizes the conspiracy theory of jurisdiction...." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 102 n.8 (3d Cir. 2004). Indeed, numerous jurisdictions have rejected or questioned the constitutionality of the conspiracy theory of jurisdiction, including Texas, California, Washington, Vermont, North Carolina, Missouri and the First and Fifth Circuits.

In any event, this Court need not decide the issue of whether New Jersey would recognize the conspiracy theory of jurisdiction because plaintiffs have failed to meet the requirement in jurisdictions that do recognize it: a *prima facie* factual showing that the defendants seeking dismissal participated in any conspiracy. Faced with sworn declarations from Lyle and Lehrman that they had absolutely no knowledge or connection to the alleged conspiracy, plaintiffs concede that they "cannot, at this nascent stage of the litigation, detail exhaustive particulars of the... independent connections between these defendants and their Enterprise co-conspirators." (Opp. Br. at 58). In such circumstances, even the jurisdictions that do recognize the conspiracy theory of jurisdiction would not apply it. "A plaintiff cannot be permitted to effect service of process on an out-of-state defendant on the mere basis that such plaintiff hopes somehow and somewhere to find enough facts to create grounds for jurisdiction." *McLaughlin v. Copeland*, 435 F. Supp 513, 533 (D. Md. 1977) (citation omitted).

Lastly, plaintiffs' request for jurisdictional discovery should be denied or, in the alternative, substantially limited. Plaintiffs, recognizing the weakness of their arguments, plead with this Court to grant them jurisdictional discovery (which they argue should coincide with the merits discovery). But courts in this Circuit routinely deny jurisdictional discovery where, as

here, a plaintiff has provided no "actual proof" to meet his burden of proof on a jurisdictional motion to dismiss. Rather than providing such proof, plaintiffs filed a 24-page attorney affidavit that argues, with no factual basis, that discovery may show that Lyle and Lehrman had contacts with New Jersey. As detailed below, not only have plaintiffs failed to provide an adequate basis for jurisdictional discovery (*see* Sections I, IV, *infra*), but the jurisdictional discovery they seek goes way beyond the limited scope of what would be permitted had they shown a basis for any discovery (*see* discussion in Sections III.A-C, *infra*).

Furthermore, the request for jurisdictional discovery is even more troubling because of the timeframe in which plaintiffs want to conduct it. Notwithstanding the fact that plaintiffs have not presented a shred of evidence tying Lehrman or Lyle to New Jersey (or the alleged conspiracy), plaintiffs would have this Court postpone the determination of whether jurisdiction exists over Lyle and Lehrman until plaintiffs have completed all discovery on the merits of their claims from all twenty-two defendants and myriad non-parties. (Affidavit of Michael J. Bowe In Support of Plaintiffs' Cross-Motion Pursuant to Fed. R. Civ. P. 56(f) ("Bowe Aff.") ¶ 54). Given the nature of the case, that process could easily take years. As discussed in Section IV, *infra*, courts routinely limit the time in which a plaintiff can conduct jurisdictional discovery. If the Court does permit jurisdictional discovery, plaintiffs should be given no more than ninety days to conduct it.

## I.    LEGAL STANDARD -- PLAINTIFFS BEAR THE BURDEN TO SHOW THAT PERSONAL JURISDICTION OVER LYLE AND LEHRMAN IS PROPER

In a jurisdictional motion to dismiss, it is plaintiffs' burden to make a *prima facie* showing of jurisdiction over the defendants, not defendants' burden to show that jurisdiction is improper. While plaintiffs acknowledge that they bear the burden ("plaintiff ultimately bears the

6

burden of demonstrating sufficient contacts with the forum," Opp. Br. at 33), they go on to cite

the wrong legal standard. Although motions to dismiss for lack of jurisdiction are controlled by

Fed. R. Civ. P. 12(b)(2), plaintiffs would have this Court apply the legal standard applicable to

motions to dismiss for failure to state a claim under Rule 12(b)(6). Plaintiffs argue, citing *Aceton*

*Inc. v. Vista Dental Products*, No. 05-3847, 2006 U.S. Dist. LEXIS 27584, at *9 (D.N.J. May 3,

2006), that this Court should dismiss this action "'only if it appears that the Plaintiff could prove

no set of facts that would entitle him to relief.'" (Opp. Br at 33) (emphasis in Opp. Br). *Aceton*,

however, does not support plaintiffs' claims. In *Aceton*, defendants brought a motion to dismiss

on two grounds: one for lack of personal jurisdiction under Rule 12(b)(2) and one for failure to

state a claim pursuant to Rule 12(b)(6). The language plaintiffs quote was used with regard to

the standard for failure to state a claim, not the 12(b)(2) standard. With regard to motions under

Rule 12(b)(2) -- as is the case here -- the *Aceton* court made clear that the standard is

substantially different and requires plaintiffs not to merely rely on their own allegations, but to

support their allegations with actual proof. As the *Aceton* court noted:

> Plaintiffs must sustain their burden of proof in establishing jurisdictional facts
> through sworn affidavits and competent evidence. At no time may a plaintiff rely
> on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2)
> motion to dismiss for lack of personal jurisdiction. Once the motion is made,
> plaintiff must respond with actual proofs, not mere allegations.

*Id.* at *6-7 (citations omitted).

Similarly, plaintiffs use the wrong standard when they argue that this Court "must accept

all of the plaintiff's allegations as true, and construe disputed facts in favor of the plaintiff."

(Opp. Br. at 33). The Third Circuit specifically addressed and rejected this argument in the

seminal case of *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir.

1984 (citations omitted):

The dissent also likens the motion made here by the defendants under
Fed.R.Civ.P. 12(b)(2) to a motion under Rule 12(b)(6) (failure to state a claim).
In doing so, the dissent would require us to accept as true all of the allegations of
the non-moving party. There is a significant procedural distinction, however,
between these two kinds of motions. A Rule 12(b)(2) motion, such as the motion
made by the defendants here, is inherently a matter which requires resolution of
factual issues outside the pleadings, i.e. whether in personam jurisdiction actually
lies. Once the defense has been raised, then the plaintiff must sustain its burden
of proof in establishing jurisdictional facts through sworn affidavits or other
competent evidence. Contrary to the dissent's suggestion, therefore, at no point
may a plaintiff rely on the bare pleadings alone in order to withstand a
defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.
Once the motion is made, plaintiff must respond with actual proofs, not mere
allegations.

Since deciding *Time Share*, the Third Circuit has reiterated this holding in two other

cases: *Stranahan Gear Co. Inc. v. NL Industries, Inc.*, 800 F.2d 53 (3d Cir. 1986) (finding that

the court lacked personal jurisdiction because the affidavits and bare allegations in the complaint

did not meet the necessary burden to show the requisite contacts with the forum); and *Mellon*

*Bank (East) PSFS, National Association v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) ("When a

defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon

plaintiff to come forward with sufficient facts to establish that jurisdiction is proper."). The *Time*

*Share* holding has been consistently followed in numerous decisions in this District (including in

cases which plaintiffs themselves quote). *See, e.g., Strauss v. Tutletaub*, Civ. No. 04-5128, 2006

U.S. Dist. LEXIS 1323 (D.N.J. Jan. 13, 2006) (Ackerman, J.); *Machulsky v. Hall*, 210 F. Supp.

2d 531, 536 (D.N.J. 2002); *Phoenix Eng'g & Supply, Inc. v. Amelco, Inc.*, No. 93-2035, 1994

U.S. Dist. LEXIS 3043, at *8 (D.N.J. Mar. 14, 1994); *Grinman v. Slots-A-Fun Casino*, No. 92-

2886, 1993 U.S. Dist. LEXIS 2873, at *9 (D.N.J. Sept. 13, 1993); *Dluhos v. Strasberg*, No. 00-

3163, 2005 U.S. Dist. LEXIS 34385 (D.N.J. Jun. 23, 2005); *Norben* 2005 U.S. Dist. LEXIS

34386, at *6-7 ("The plaintiff meets this burden by establishing with reasonable particularity

sufficient contacts between the defendant and the forum state.") (citation omitted).

8

As demonstrated below, plaintiffs have not even come close to meeting their burden of showing that Lyle and Lehrman are subject to personal jurisdiction in New Jersey.[1]

## II.   PLAINTIFFS' NEW JERSEY CAUSES OF ACTIONS DO NOT ALLOW FOR NATIONWIDE SERVICE AND REMOVING THE ACTION TO FEDERAL COURT DID NOT CHANGE THAT FACT

Plaintiffs do not argue -- and the law does not support the argument -- that Lyle and Lehrman would have been subject to nationwide service had the case remained in New Jersey state court. (Opp. Br. at 34-37). But plaintiffs would have the Court find that because Lyle and Lehrman consented to the removal of the action to federal court based on a federal question, the nationwide service of process available for certain federal causes of action now applies (Opp. Br. at 34-37). That argument is wrong.[2]

The U.S. Supreme Court has long held that when a defendant removes a case from state to federal court, the removal does not -- and cannot -- waive the defendant's jurisdictional

---

[1]   Lyle and Lehrman are mentioned specifically only twice each in the Complaint. With respect to Lehrman, the Complaint alleges that he is a resident of Washington, D.C. (Compl. ¶ 34) and used to work for Tiger Management where his employment overlapped with Arthur Cohen (Compl. ¶ 64). Lehrman has not communicated with Arthur Cohen since he left Tiger Management in 1997. (Lehrman Suppl. Decl. ¶ 13). As for Lyle, the Complaint alleges that he is a resident of New York (Compl. ¶ 35, which is inaccurate as he lives in the United Kingdom, Lyle Decl. ¶ 1); that he is managing director of GLG (Compl. ¶ 35, which is inaccurate, he is only an outside director, Lyle Decl. ¶ 3); and that he used to work for Tiger Management where his employment overlapped with Arthur Cohen (Compl. ¶ 64). Lyle has not communicated with Arthur Cohen since he left Tiger Management in 1997. (Lyle Suppl. Decl. ¶ 13).

[2]   The fact that plaintiffs did not bring any causes of action under federal law does not mean that plaintiffs' actions do not raise federal questions. As held just recently by the U.S. Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S. Ct. 2363, 2367 (2005), "this Court ha[s] recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues."

9

defenses. The Court addressed this question long ago in *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405 (1929) and rejected this argument. *Id.* at 409 ("Petitioner suggests that, by removal of the case to the federal court, objection to jurisdiction over the person of respondent was waived. Our decisions are to the contrary."). The U.S. Supreme Court reiterated this holding in *State of Minnesota v. U.S.*, 305 U.S. 382, 389 (1939) (holding that "jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. Where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although in a like suit originally brought in a federal court it would have had jurisdiction."); and *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("[T]he invocation of removal jurisdiction by a federal officer does not revise or alter the underlying law to be applied. In this respect, it is a purely derivative form of jurisdiction, neither enlarging nor contracting the rights of the parties.").

The Third Circuit has followed the Supreme Court's holdings. *See A.J. Curtis & Co. v. D. W. Falls, In*c., 305 F.2d 811, 814 (3d Cir. 1962). Accordingly, courts in the Third Circuit have held that "[r]emoval to federal court does not constitute waiver to object to this court's venue or exercise of personal jurisdiction. Rather this court, after removal, takes up the case where the state court procedurally left off." *Harrison v. L.P. Rock Corp.*, No. Civ. A. 99-CV-5886, 2000 WL 19257, at *1 n.1 (E.D. Pa. Jan. 7, 2000).[3]

A review of the actual provisions plaintiffs cite to in support of their argument for nationwide service makes it crystal clear that only if plaintiffs' causes of action were brought as

---

[3]   *See also Lewis-Ugdah v. HBE Corp.*, No. Civ. A. 00-3884, 2000 WL 1780233, at *1 (E.D. Pa. Dec. 1, 2000); *Brown v. AST Sports Science, Inc.*, No. Civ. A 02-1682, 2002 WL 32345935, at *5 (E.D. Pa. Jun. 28, 2002) ("Petitioning for removal does not amount to consenting to personal jurisdiction."); *Johns v. U.S.P.S*, 593 F. Supp. 398, 399 (W.D. Pa. 1984).

federal RICO claims or federal securities claims would nationwide service be warranted. Section 18 U.S.C. § 1965(b) (cited at Opp. Br. at 35) provides that:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

Similarly, Section 15 U.S.C. § 78aa (cited at Opp. Br. at 35) provides that:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

By the terms of the two statutes, nationwide service is only available in actions brought under those statutes. Not surprisingly, the two cases that plaintiffs cite on this point in footnote 20 of their brief support this reading of the statutory language. *See Pinker v. Roche Holdings, Ltd*, 292 F.3d 361, 369 (3d Cir. 2002) (nationwide service provision in 15 U.S.C. § 78aa applied to an action brought under Section 10(b) of the Securities Exchange Act, 15 U.S.C § 78j(b) and Rule 10b-5); and *Shulton, Inc. v. Optel Corp.*, No. 85-2925, 1986 WL 15617, at *4 (D.N.J. Sept. 29, 1986) (nationwide service provision in 18 U.S.C. § 1965(b) applied to nine causes of action brought under the federal RICO statute, 18 U.S.C. § 1961, *et seq.*).

Notwithstanding the unequivocal law on this issue, plaintiffs maintain that even though they only brought New Jersey state law causes of action, Lyle and Lehrman are subject to nationwide service just because they consented to the removal of the action to federal court. Such a result would be wholly inconsistent with the Supreme Court's holdings that removal does not waive personal jurisdiction defenses. Since plaintiffs chose not to bring an action under the

11

federal RICO or securities laws, sections 18 U.S.C. § 1965(b) and 15 U.S.C. § 78aa are inapplicable and do not provide for nationwide service in this case.[4]

## III.   NONE OF THE NEW JERSEY "CONTACTS" CITED BY PLAINTIFFS SUPPORT PERSONAL JURISDICTION OVER LYLE AND LEHRMAN

Plaintiffs' opposition papers contain no competent evidence to refute Lyle's and Lehrman's declarations demonstrating that neither defendant had contacts with New Jersey that would subject them to personal jurisdiction. Instead, plaintiffs resort to arguing that "[p]hysical contacts [with the forum] are not required" and that "the best way to assess the defendants' contacts with New Jersey is through their involvement in the scheme alleged in the complaint" (Opp. Br. at 38-39), implying that such contacts would subject Lyle and Lehrman to specific jurisdiction under the "effects test" or the "conspiracy theory of jurisdiction." Plaintiffs also make reference to GLG's contacts with the forum, which they argue give rise to general jurisdiction over GLG, and is therefore relevant to the question of jurisdiction over Lyle and Lehrman. (Mishaan Aff. ¶ 19). As detailed below (*see* Sections III.A-C), *infra*, none of plaintiffs' legal arguments about defendants' imputed or so-called "contacts" have any merit in this case.

### A.   GLG'S CONTACTS WITH NEW JERSEY ARE IRRELEVANT TO THE DETERMINATION OF PERSONAL JURISDICTION OVER ITS DIRECTORS, LYLE AND LEHRMAN

Plaintiffs confuse issues when they argue that GLG's contacts with New Jersey somehow mean that Lyle and Lehrman themselves are subject to jurisdiction in New Jersey. For example, plaintiffs make much out of the fact that they have "uncovered" that some of GLG's directors,

---

[4]   Consequently, plaintiffs' arguments about Lehrman's and Lyle's national contacts with the United States are wholly irrelevant. (*See* Opp. Br. at 37).

officers and experts reside in New Jersey (Opp. Br. at 39-40, Pls. Exs. 12, 29-44). They also refer to GLG's website from which they infer that "[m]any of [GLG's] clients, experts and meetings assuredly take place in New Jersey." (*Id.* at 40, Pls. Ex. 4). They conclude that "[i]t is thus apparent that there are a tremendous number of contacts between Gerson Lehrman itself and New Jersey," (*Id.* at 40-41), and request broad discovery on those contacts. (Mishaan Aff. ¶¶ 19-20). Plaintiffs explain that they "seek to establish the extent of Gerson Lehrman Group's contacts with the state of New Jersey, because the extent of such contacts -- particularly if they rise to the level of continuous and systematic contacts giving rise to general jurisdiction over Gerson Lehrman Group -- would be relevant to establishing the minimum contacts of Lyle and Lehrman, both of whom are affiliates of Gerson Lehrman." (Mishaan Aff. ¶ 19). Plaintiffs also seek discovery on any contact Lyle's current employer, Millgate Capital Inc., may have had with New Jersey. (Mishaan Aff. ¶ 41).

Plaintiffs' argument has no basis in law and thus their request for discovery about GLG's contacts with New Jersey (and Millgate's) would not yield anything pertinent to the jurisdictional analysis. As this Court is well aware, the contacts between a corporation and a forum in which it does business are wholly irrelevant to the issue of whether its officers, directors or employees are subject to jurisdiction in the forum. In fact, this Court has just recently in *Strauss v. Turtletaub* rejected the very same argument plaintiffs are making. The plaintiff in that case argued that the court had personal jurisdiction over a defendant because he was the chief executive officer of a corporation that did business in New Jersey. This Court rejected that argument, explaining that "[t]his argument fails, however, because [plaintiff] has not articulated any facts linking [defendant] to New Jersey in his personal capacity." 2006 U.S. Dist. LEXIS 1323, at *14.

13

Plaintiffs are well aware of this principle because the cases they quote on pages 41-42 of their brief clearly recite that holding.  In *Calder v. Jones*, 465 U.S. 783, 790 (1984), the U.S. Supreme Court held that "[p]etitioners are correct that their contacts with [the forum] are not to be judged according to their employer's activities there."  This holding was reiterated in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (holding that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him").  Similarly, in *Norben*, 2005 U.S. Dist. LEXIS 34386, at *13, the court held that "personal jurisdiction does not exist over a corporate officer simply because the corporate entity itself may be amenable to personal jurisdiction in the forum."  In *Educational Testing Serv. v. Katzman*, 631 F. Supp. 550, 559 (D.N.J. 1986), the court held, too, that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." (citations omitted).  The *Educational Testing* court refused to impute the corporation's contacts to its sole shareholder and officer unless it is "established that the specific action within New Jersey was taken by the [individual] himself."  *See also Digiralomo v. Shop at Home, Inc.*, No. Civ. 01-CV-4001, 2002 WL 576024, at *3 (D.N.J. Mar. 1, 2002) ("Personal jurisdiction over a defendant is not established simply because he is an employees [sic] of a business subject to jurisdiction in a district court.").

In short, GLG's contacts with New Jersey are wholly irrelevant to the determination of personal jurisdiction over its directors, Lyle and Lehrman.  Any contact between Millgate and New Jersey is irrelevant for the same reason.  Indeed, plaintiffs' emphasis on contacts between GLG or Millgate and New Jersey and their consequent requests for discovery on those contacts, is nothing more than a red herring.

**1.     Lyle's And Lehrman's Contacts With New Jersey In Their Corporate Capacities With GLG Should Not Be Considered For A Jurisdictional**

14

**Analysis, And, In Any Event, Lyle And Lehrman Had No Contacts
With New Jersey In That Capacity**

Recognizing the frivolousness of their argument with respect to GLG's contacts with

New Jersey, plaintiffs resort to arguing that "[d]iscovery will show that both Lyle and Lehrman

were directly involved in many of Gerson Lehrman's New Jersey contacts." (Opp. Br. at 41).

Plaintiffs argue such discovery is relevant because "[w]here jurisdiction is asserted over a

corporate official, courts properly may consider the official's contacts with the forum state in his

or her individual and corporate capacity." (*Id.*). Consequently, plaintiffs request all-

encompassing discovery on all of Lyle's and Lehrman's contacts with New Jersey in connection

with their GLG responsibilities or contacts with GLG officers or directors who reside in New

Jersey. (Mishaan Aff. ¶¶ 17-18). It should be noted that plaintiffs proffer no evidence showing

that Lyle or Lehrman were actually engaged in any activities in New Jersey in any capacity, let

alone in connection with any tortious conduct targeted at plaintiffs.

However, as courts in the Third Circuit have held, "[a]s a general rule, an individual

whose contacts with the forum state are in his corporate capacity does not thereby become

subject to jurisdiction in his individual capacity." *Norben*, 2005 U.S. LEXIS 34386, at *13 (this

rule is also known as the "fiduciary shield doctrine."). Although courts have recognized

exceptions to this general rule, those are limited. In *Lautman v. The Loewen Group, Inc.*, Civ.

Act. No. 99-75, 2000 U.S. Dist. LEXIS 8241, at *16-17 (E.D. Pa. Jun. 15, 2000), the court

detailed the circumstances is which courts have recognized exceptions to the fiduciary shield

doctrine: (i) when "an officer was involved in tortious conduct for which he or she could be held

personally liable;" and (ii) when "a corporate officer has been charged with violating a statutory

scheme that provides for personal, as well, as corporate, liability." *See also Rotothem Corp. v.
Penn Linen & Uniform Serv., Inc.*, No. 96-6544, 1997 U.S. Dist LEXIS 10057, at *21 n.10 (E.D.

15

Pa. Jul. 3, 1997). In cases involving these exceptions, three factors determine whether it is proper to consider the defendant's corporate contacts in the jurisdictional inquiry: (i) "the extent and nature of a corporate officer's personal participation in the tortious conduct;" (ii) "the nature and quality of the officer's forum contacts;" and (iii) "the officer's role in the corporate structure." *Rittenhouse v. Dollars & Sense, Inc.*, No. Civ. A. 83-5996, 1987 U.S. Dist. LEXIS 3061, at *13 (E.D. Pa. Apr. 15, 1987), *Lautman*, 2000 U.S. Dist. LEXIS 8241, at *6-17.[5]

The cases plaintiffs cite in their brief (Opp. Br. at 41) fall under the limited exceptions to the rule outlined above but are wholly inapposite. In *Norben*, for example, the individuals were "two of three family member-stockholders and share primary managerial responsibility at [the defendant corporation]." 2005 U.S. Dist. LEXIS 34386, at *14.[6] In *Educational Testing*, the only other case from this Circuit that plaintiffs cite on this issue, the individual defendant was the company's only corporate officer and shareholder.[7]

---

[5]   Some courts in the Third Circuit have rejected the exceptions to the fiduciary shield doctrine and have held that "a corporate officer or director's actions taken in his corporate capacity are, by themselves, insufficient to bring him personally within the jurisdiction of this court." *Simkins Corp. v. Gourmet Resources Int'l, Inc.*, 601 F. Supp. 1336, 1345 (E.D. Pa. 1985); *Nicholas v. Stone*, Civ. No. 97-860, 1998 U.S. Dist. LEXIS 22977, at *29 (D.N.J. Jun. 30, 1998) ("The law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity.")

[6]   Nonetheless, the court's holding in *Norben* did not attribute any of the corporate contacts to the individual defendants. Rather, the *Norben* court held that the one officer was subject to personal jurisdiction by virtue of his having personally guaranteed payment of certain checks "with jurisdiction for the guarantee in the state of New Jersey" (*Id.* at *20) and the other individual defendant was subject to personal jurisdiction since he personally guaranteed the company's debt in his individual capacity (*Id.* at *21).

[7]   *Itoba Ltd v. LEP Group plc*, 930 F. Supp. 36 (D. Conn. 1996), the Connecticut case plaintiffs cite in this regard, (Opp. Br. at 41) is also inapposite. There, plaintiffs presented actual evidence, which was not refuted by the director-defendant, that he personally approved the misleading Form 20-F to be filed with the Securities and Exchange Commission. *Id.* at 41.

(Continued...)

16

Here, plaintiffs made no allegations, certainly no particular allegations, that would make the fiduciary shield doctrine inapplicable. Plaintiffs have made no allegations about, or provided actual proof of "the extent and nature" of Lyle's or Lehrman's personal participation in any alleged tortious activity or the "nature and quality of the [defendants'] forum contacts." Moreover, with regard to Lehrman's and Lyle's role in GLG's corporate structure, Lyle and Lehrman at the relevant time period (in 2003) were directors of GLG, had no managerial role, and owned approximately 1.46% (Lyle) and 26.75% (Lehrman) of GLG's stock. (Declaration of James Lyle ("Lyle Decl.") ¶ 4; Lyle Suppl. Decl. ¶ 4; Lehrman Suppl. Decl. ¶¶ 3-4, 6). In fact in July 2003, Lyle was not even a director with GLG. (Lyle Decl. ¶ 3). Consequently, none of the considerations articulated in *Rittenhouse* and *Rotothem* would allow for any exceptions to the fiduciary shield doctrine in this case.[8]

In any event, even if the corporate shield doctrine did not apply in this case, Lyle and Lehrman had no involvement in the alleged conspiracy, in their corporate capacities or otherwise. (Declaration of Thomas Lehrman ("Lehrman Decl.") ¶¶ 5-8, Lyle Decl. ¶¶ 4-7). In fact, Lyle never attended any meetings or conferences in New Jersey or made any visits to New Jersey in his GLG corporate capacity (he was not even a director with GLG in July 2003), and Lehrman never did so after he resigned from his executive position with GLG in 2001. (Lyle

---

The court held that "it is reasonable to conclude that [the director]... knew or should have known that the Form 20-F he approved would be filed with the SEC and be relied on by potential investors." *Id.* at 41.

[8] As a result, the discovery requested by plaintiffs on Lehrman's and Lyle's corporate contacts with New Jersey (Mishaan Aff. ¶¶ 17-18) -- is irrelevant. Even if discovery was appropriate (and it is not, *see* Section IV, *infra*), the only relevant discovery would be defendants' alleged tortious activity concerning Biovail and not any and all contacts Lyle and Lehrman had with New Jersey in their corporate capacities.

Suppl. Decl. ¶ 7; Lehrman Suppl. Decl. ¶ 8). Because plaintiffs have proffered no evidence to show Lyle and Lehrman had any contacts with New Jersey in their corporate capacities with GLG, Lyle's and Lehrman's motions to dismiss should be granted whether or not the corporate shield doctrine applies.

### B.    THE "EFFECTS" TEST DOES NOT SUBJECT LYLE AND LEHRMAN TO SPECIFIC JURISDICTION

Plaintiffs' attempt to establish jurisdiction by invoking the so-called effects test is also without merit.[9] Plaintiffs argue that the alleged "harm inflicted by defendants and their co-conspirators was visited upon plaintiff Biovail Pharmaceuticals, Inc., a corporation headquartered in Bridgewater, New Jersey." (Opp. Br. at 43). Specifically, plaintiffs allege that defendants "interfere[ed] with [BPI's] access to credit and financing" (Opp. Br. at 43); "damage[ed] [BPI's] business reputation and critical business relationships"; (*Id.* at 44) caused "numerous New Jersey residents [to] los[e] their jobs" (*Id.*); and caused "substantial losses on the part of New Jersey shareholders who had invested in the publicly traded parent corporation of BPI." (*Id.*). Plaintiffs conclude by stating that "New Jersey was thus the locus of the Enterprise's tortious conduct." (Opp. Br. at 44).[10]

---

[9]    Although plaintiffs never refer to the effects test by its name, the discussion under "Contacts arising From Lyle and Lehrman's Participation in the Attack on Biovail" (Opp. Br. at 42-44) is clearly premised on it. The effects tests was first announced by the U.S. Supreme Court case in *Calder v. Jones*, 465 U.S. 783 (1984).

[10]    Notably, the two cases plaintiffs cite to support this proposition (Opp. Br. at 44) have nothing to with personal jurisdiction. Instead, both cases deal with choice of law determination and are thus are completely irrelevant to this motion. *Capone v. Nadig*, 963 F. Supp. 409, 413 (D.N.J. 1997) (holding that New Jersey has a greater interest than Pennsylvania in having its laws applied to a survival claim); *Amoroso v. Burdette Tomlin Mem'l Hosp.*, 901 F. Supp. 900, 905 (D.N.J. 1995) (same).

None of these alleged damages that purportedly occurred in New Jersey, however, would subject Lyle and Lehrman to personal jurisdiction in New Jersey. As the Third Circuit made clear in *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 261 (3d Cir. 1998), the effects test is only applicable where a plaintiff has shown three factors: (i) that the defendant committed an intentional tort; (ii) that the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; and (iii) that the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.[11]

Here, plaintiffs cannot satisfy the first prong of the test, let alone all three. First, plaintiffs have not alleged any facts, or provided any proof, that demonstrate that Lyle or Lehrman were engaged in any tortious activity that targeted Biovail (in the forum or outside the forum). In fact, there is no allegation (and, of course, no evidence) that Lyle or Lehrman had anything to do with the publication of the two July 2003 articles, which are the only events as to which any allegations are made with respect to any of the Gerson Lehrman Defendants. (*See, e.g.*, Compl. ¶ 69). Indeed, in Plaintiffs' 87-page complaint, Lyle and Lehrman are mentioned each in only two paragraphs of the Complaint and never in connection with any of the alleged tortious conduct. (Compl. ¶¶ 34, 36, 64).

---

[11] It should be noted that in connection with actions done in a corporate capacity, some courts have held that "it would never be proper to consider an officer's actions performed outside the forum, even where those actions cause injury within the forum." *Forum Publ'ns, Inc. v. P.T. Publishers, Inc.*, 700 F. Supp. 236, 246 (E.D. Pa. 1988) (citation omitted); *Kane Commc'ns, Inc. v. Klombers*, No. Civ. A. 87-6594, 1988 WL 26462, at *4 (E.D. Pa. Mar. 10, 1988) (same); *Rittenhouse & Lee v. Dollars & Sense, Inc.*, Civ. A. No. 83-5996, 1987 WL 9665 (E.D. Pa. Apr. 15, 1987) (declining to exercise personal jurisdiction over defendants whose alleged tortious conduct occurred outside of the forum).

Perhaps most cynical though is plaintiffs' attempt to satisfy the second prong under the effects test -- which requires that the plaintiff felt the brunt of the alleged harm in the forum. *IMO Indus.*, 155 F.3d at 261. Plaintiffs concede in their Complaint that Biovail Corporation is a Canadian corporation with its principle offices in Mississauga, Ontario, Canada. (Compl. ¶ 16). In fact, Biovail Corporation has admitted in a certification it previously filed in another action that: "Biovail Corporation has no offices and does not regularly conduct business in New Jersey." (*See* motion to dismiss and supporting certification by Bovaird, VP for Taxation of Biovail Corporation ("Bovaird Cert."), filed in *Albert v. Biovail*, Civ. A. No. 04-1713 (D.N.J.), attached as Exhibits A and B to the Certification of Anthony J. Marchetta, Esq. In Support of Defendants' Motions To Dismiss ("Marchetta Cert.")). While plaintiffs now try to create the impression that Biovail Corporation's subsidiary -- BPI -- had its principle office in New Jersey at the time the two articles were published, Biovail Corporation has already admitted that is not the case. In contrast to the position plaintiffs are taking in this case, when Biovail Corporation filed its own motion to dismiss, a case in which it was a defendant, it represented that "BPI had its principal office in North Carolina until November 2003, when its principal office was relocated to Bridgewater, New Jersey." (*See* Ex. B to Marchetta Cert. ¶ 8). Thus, in July 2003, when the two  articles were published, BPI still had its principal office in North Carolina. Consequently, there is no basis for any argument that BPI "felt the brunt" of the harm it claims in New Jersey as required to satisfy the second prong of the effects test. *See Genesis Intern. Holdings Int'l Infrastructure Consortium v. US-Algeria Business Council*, No. 05 CV 4487, 2006 WL 1128729, at *4 (D.N.J. Apr. 27, 2006) ("Although Plaintiff claims to have felt the brunt of the harm in New Jersey, he has offered no proof for his conclusory allegation.").[12]

---

[12]   Moreover, much of the harm plaintiffs allege is completely irrelevant to the effects test
(Continued...)

20

As for the third prong, a plaintiff cannot meet its heavy burden of showing that the defendant expressly aimed his allegedly tortious conduct at the forum by "simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum." *Imo*, 155 F.3d at 265. *See also Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 731 (E.D. Pa. 1999) ("It is certainly foreseeable that some of the harm would be felt in [the forum] because Plaintiff lives and works there, but such foreseeability is not sufficient for an assertion of jurisdiction."). Thus, plaintiffs' allegation that the "harm inflicted… was visited upon… a corporation headquartered in Bridgewater, New Jersey" (Opp. Br. at 43) is not only contrary to Biovail Corporation's admission, but insufficient to meet this prong. Other than this (insufficient) assertion, plaintiffs have alleged nothing that would demonstrate that Lyle and Lehrman expressly targeted New Jersey. Indeed, the articles in *The Wall Street Journal* and *Barron's* prove that Lyle and Lehrman could not have expressly targeted New Jersey. The articles do not mention BPI or New Jersey. They refer to BPI's parent corporation, Biovail Corp International, which both articles mention is located in Canada. (*See* Pls. Exs. 23-24). *Cf. Calder v. Jones*, 465 U.S. 783 (1984) (effects test satisfied where the subject matter of the offending story explicitly focused on the forum state).[13]

---

because it involves harm suffered (if at all) by unrelated parties, not the plaintiffs. For instance, plaintiffs' allegations about damages suffered by BPI's former employees and Biovail's New Jersey shareholders cannot be considered as part of the harm **BPI** claims to have suffered in New Jersey. "[T]he plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum …." *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, *266 (3d Cir. 1998).

[13]   In addition, the fact that both *The Wall Street Journal* and *Barron's* are periodicals with nationwide and international audiences negates the conclusion that they were expressly aimed at New Jersey. *See, e.g., Machulsky v. Hall*, 210 F. Supp. 2d 531, 542 (D.N.J. 2002) (posting of allegedly defamatory material on the internet about the plaintiff located in New

(Continued…)

### 1.    Other Companies Located In New Jersey Do Not Satisfy The Effects Test

Plaintiffs also cannot satisfy the effects test by citing passing references in the Complaint to six other companies located in New Jersey that defendants supposedly targeted as part of the alleged conspiracy (Opp. Br. at 44-45). Plaintiffs have provided no particular allegations, let alone actual proof, that Lehrman or Lyle were part of a conspiracy that targeted these other companies. The three paragraphs in the Complaint that address these companies contain no details, but simply make the conclusory allegation that these companies were targeted as part of the alleged conspiracy. (Compl. ¶¶ 14, 61, 150). There are no allegations in the Complaint about the harm these companies are supposed to have suffered or what actions were taken against them, much less which defendants are supposed to have taken these actions. These conclusory allegations would never permit a finding that Lyle and Lehrman are subject to personal jurisdiction in New Jersey under the effects test (or under any other theory).[14]

---

Jersey did not target plaintiff's potential New Jersey customers since the website targeted a worldwide audience); *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 731 (E.D. Pa. 1999).

[14]    Consequently, the discovery requested by plaintiffs on this issue (Mishaan Aff. ¶¶ 30-31), is completely irrelevant. In addition, the supplemental declarations submitted by Lyle and Lehrman make clear that they were not involved in any alleged conspiracy to target other companies as alleged in the Complaint. (Lyle Suppl. Decl. ¶ 17, Lehrman Suppl. Decl. ¶ 16).

C.  **NEW JERSEY COURTS HAVE NOT RECOGNIZED THE CONSPIRACY THEORY OF JURISDICTION, WHICH, AS MANY OTHER COURTS HAVE HELD, IS UNCONSTITUTIONAL. IN ANY EVENT, PLAINTIFFS HAVE FAILED TO MAKE THE FACTUAL SHOWING REQUIRED IN THE JURISDICTIONS THAT DO RECOGNIZE THE THEORY**

1.  **The Law On The Conspiracy Theory Of Jurisdiction Is Unsettled In New Jersey And Has Been Rejected As Unconstitutional By Many Other Jurisdictions**

Although plaintiffs would have the Court believe that the "conspiracy theory of jurisdiction" which, where recognized, permits the conduct of one co-conspirator (in the forum) to be attributed for jurisdictional purposes to the other co-conspirators (outside the forum) "is well-settled under New Jersey law" (Opp. Br. at 45), nothing could be further from the truth. In fact, as noted in a recent Third Circuit case that plaintiffs cite repeatedly in their brief, "it is unclear whether New Jersey even recognizes the conspiracy theory of jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 102, n.8 (3d Cir. 2004).

Indeed, none of the New Jersey or Third Circuit cases that plaintiffs point to (Opp. Br. at 46) support their statement of the law on this issue. For example, the three Third Circuit cases plaintiffs refer to, discussed attributing contacts of an agent or partner (not a co-conspirator) to its principal or partnership (again, not co-conspirator). *See Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 480, 483 (3d Cir. 1993) (concluding that "[a]ctivities of a party's agent [a partner at a law firm] may count towards the minimum contacts necessary to support personal jurisdiction."); *Mellon Bank*, 960 F.2d at 1225 n.5 (holding that defendants' agent's contacts with the forum can be attributed to them); *Carteret, Sov. Bank, F.A. v. Shusan*, 954 F.2d 141, 145 n.6 (3d Cir. 1992) ("We recognize that while the due process standard must be applied to each defendant…this requirement poses no additional analysis here because the defendants consist of an attorney, his law partners and the law firm partnership."). Likewise, the only New Jersey case plaintiffs cite, *Matsumoto v. Matsumoto*, 762 A.2d 224 (N.J. Super. Ct.

23

App. Div. 2000), *affirmed as modified by*, 792 A2d 1222 (2002), did not premise its decision on the conspiracy theory of jurisdiction but rather on the effects test. In that case, the trial court held that "[b]ecause [defendant] was charged with intentional torts against plaintiff designed to cause her harm in New Jersey, [defendant] was found to have sufficient contacts with New Jersey to allow its courts to exercise personal jurisdiction over her." *Id*. at 228. The court of appeals affirmed. While citing the *Calder v. Jones* Supreme Court case, the appellate court held that jurisdiction may be found over nonresidents whose "intentional tortious actions conducted outside the jurisdiction, [were] aimed at a person or entity within the jurisdiction with the knowledge of the potentially devastating impact of the acts." *Id*. at 230. In other words, neither the trial nor appellate court's decision in *Matsumoto* considered, much less applied, the conspiracy theory of jurisdiction.

In fact, although New Jersey has not recognized the conspiracy theory of jurisdiction, many other jurisdictions who have had the opportunity to consider it, have categorically rejected or refused to accept it on the grounds that it does not comport with due process. As discussed in the rest of this subsection, courts in Texas, California, Washington, Vermont, North Carolina, Missouri and the First and Fifth Circuits have all declined to apply the theory or have voiced grave concerns over its constitutionality. Many of these decisions base their holdings on the U.S. Supreme Court decisions in *Calder v. Jones* (holding that "[e]ach defendant's contacts with the forum state must be assessed individually"); and *Rush v. Savchuk*, 444 U.S. 320 (1980) (rejecting as "plainly unconstitutional" the proposed attribution of an insurer's forum contacts to an insured, where the insurer had a contractual duty to defend and indemnify the insured).

The Texas Supreme Court's decision is illustrative of the substantial authority rejecting the conspiracy theory of jurisdiction. *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769 (Tex.

1995). In that case, former sandblasters who contracted silicosis brought suit against several manufacturers and sellers of sand as well as lobbyists for the sandblasting industry. Plaintiffs asserted a conspiracy claim and, on that basis, sought to obtain in personam jurisdiction over the nonresident entity (whose "only contacts" with Texas were "periodic mailings of its letters, publications, and notices of acceptance of dues" to a member located in Texas). *Id.* at 772. The Texas Supreme Court emphatically "decline[d] to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state." *Id.* at 773. In so holding, the Texas Supreme Court explained that, in *Rush v. Savchuk*, 444 U.S. 320 (1980), the U.S. Supreme Court made clear that under the Due Process Clause "it is the contacts of the defendant himself that are determinative." *Id.*[15]

In California, the appellate court in *Mansour v. Super. Ct. of Orange County*, 38 Cal. App. 4th 1750, 1760-61 (Cal. Ct. App. 1995), relied on the U.S. Supreme Court's teachings in *Calder v. Jones*, 465 U.S. 783 and *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379 (1953)

---

[15]  Similarly, the Fifth Circuit in *Delta Brands Inc. v. Danieli Corp.*, No. 03-11052, 99 Fed. Appx. 1 (5th Cir. May 5, 2004) (unpublished), held that "[t]o establish its *prima facie* case of specific personal jurisdiction [plaintiff] was required to show that [defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas." *Id.* at 6. *See also Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 609 (E.D. Tex. 1994) (finding no personal jurisdiction over RICO defendants based on the conspiracy theory of jurisdiction "because to do so would allow any defendant, who is allegedly a co-conspirator with a person under the court's personal jurisdiction, to be haled into a forum with which that defendant has no contacts. This result would severely undermine the Supreme Court's rationale that the Due Process clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.") (citations omitted).

(which rejected the theory of vicarious venue for co-conspirators), to reject the conspiracy theory. Two District Courts applying California law have also rejected the theory.[16]

Likewise, a Washington appellate court in *Hewitt v. Hewitt*, 78 Wash. App. 447, 454 n.3 (Wa. Ct. App. 1995) noted that "[a]lthough Washington courts have not ruled on the constitutionality of this theory, other courts generally disapprove of its use…given constitutional principles governing the exercise of jurisdiction, we find these cases [accepting the conspiracy theory of jurisdiction] unpersuasive, particularly in light of the facts and circumstances of this case." Similarly, while not resolving the issue, the Supreme Court of Vermont noted that the U.S. Supreme Court's decision in *Calder* "strongly suggest[s], however, that conspiracy participation is not enough." *Schwartz v. Frankenhoff*, 733 A.2d 74 (Vt. 1999).[17]

The First Circuit has also expressed great skepticism about the conspiracy theory. *Glaros v. Perse*, 628 F.2d 679, 682 (1st Cir. 1980) ("[W]e do not mean to imply that we would … recognize a conspiracy theory of personal jurisdiction at all."). *See also In re Lernout & Hauspie*

---

[16]  *See Foley v. Marquez*, No. C 03-2481, 2004 WL 603566, at *4 (N.D. Cal. Mar. 22, 2004) ("California does not recognize conspiracy as a basis for acquiring jurisdiction over a party."); *Kipperman v. McCone*, 422 F. Supp. 860 (N.D. Cal. 1976) (rejecting the conspiracy theory while relying on the Supreme Court's case in *Bankers Life* and noting that it is "[t]hat much more frivolous … that personal jurisdiction, the exercise of which is governed by strict constitutional standards, may depend upon the imputed conduct of a co-conspirator").

[17]  Other jurisdictions have also considered and rejected the conspiracy theory on due process grounds. *Insolia v. Philip Morris Inc.*, 31 F. Supp. 2d 660, 672 (W.D. Wis. 1998) ("[I]t is clear that jurisdiction under this [conspiracy] theory would not comport with due process."); *Hollar v. Philip Morris Inc.*, 43 F. Supp. 2d 794, 802 (N.D. Ohio 1998) ("Since personal jurisdiction must be based on the actions and contacts of the specific defendant at issue, the Court declines to apply the so called "conspiracy theory of jurisdiction" (citations omitted)); *Allen v. Columbia Fin. Mgmt., Ltd.*, 297 S.C. 481, 490, (S.C. App. 1988) ("We decline to attribute the contacts of one alleged conspirator to another alleged conspirator."); *City of St. Louis v. American Tobacco Co.*, Case No. 982-09652, 2003 WL 23277277, at *7 (Mo. Cir. Dec. 16, 2003) ("[T]he Court disagrees as a matter of law with this conspiracy theory of personal jurisdiction.").

*Sec. Litig.*, No. Civ. A. 00-115890, 2004 WL 1490435, at *8 n.11 (D. Mass. Jun. 28, 2004) (noting that "it is eminently clear the conspiracy theory of jurisdiction does not have a lot of support in this jurisdiction" and declining to make any finding that the conspiracy theory of jurisdiction is valid in that jurisdiction); *In re New Motors Vehicles Canadian Export Antitrust Litig.*, 307 F. Supp. 2d 145, 158 (D. Maine 2004, *amended by,* 2004 WL 1571617 (2004) ("[W]e do not believe that the First Circuit would recognize a conspiracy theory of jurisdiction").[18]

Against this backdrop, it is doubtful that New Jersey would accept the conspiracy theory of jurisdiction. As many other courts suggested, the U.S. Supreme Court's decisions in *Calder v. Jones*, and *Rush v. Savchuk*, 444 U.S. 320 (1980), teach that each defendant's contacts should be assessed individually -- negating the conclusion that co-conspirator's contacts can be attributed to others. Scholars have advocated rejection of the conspiracy theory of jurisdiction as well.[19] Accordingly, this court should not apply the theory.

### 2.    Plaintiffs Cannot Meet The Strict Requirements Imposed By The Jurisdictions That Do Accept The Conspiracy Theory Of Jurisdiction

Even if New Jersey did recognize the conspiracy theory of jurisdiction, plaintiffs could not make the factual showing required for the doctrine to apply. In jurisdictions that have accepted the theory, courts impose strict requirements that must be satisfied before they will permit a co-conspirator's contacts to be imputed to another co-conspirator. Plaintiffs concede

---

[18] *See also Steinke v. Safeco Ins. Co. of America*, 270 F. Supp. 2d 1196, 1200 (D. Mont. 2003) ("This Court has never recognized the conspiracy theory of jurisdiction, nor has the Ninth Circuit, nor has the Montana Supreme Court").

[19] *See* Stuart M. Riback, *The Long Arm And Multiple Defendants: The Conspiracy Theory of In Personam Jurisdiction*, 84 Colum. L. Rev. 506, 536 (1984) (concluding that "[t]he theory should be replaced with an analysis based on minimum contacts, that looks to each defendant's contacts with the forum without extraneous conceptual frameworks.").

that jurisdictions that accept the theory require that a plaintiff make: (1) "a *prima facie* factual showing of conspiracy"; (2) "allegations of specific facts warranting the inference that the defendant was a member of the conspiracy"; and (3) a "showing that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in this jurisdiction." (Opp. Br. at 46).[20]

Some jurisdictions require an even tougher showing than that. Plaintiffs concede, for example, that the Delaware Supreme Court has required that in addition to the requirements cited above, a plaintiff show: (a) "that the defendant knew or had reason to know of the act in the forum state or that acts outside the forum would have an effect in the forum state," and that (b) "the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy." *Instituto Bancario Italiano, SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225. (Del. 1982).[21] (Opp. Br. at 50, n.27). As the Delaware Court explained, this is "a strict test, modeled after the ones used in cases that have previously recognized the conspiracy theory of jurisdiction." *Id.*[22]

---

[20]   The requirements for proving conspiracy under New Jersey law are outlined in James Lyle's opening brief at 26-27 and the requirements for proving RICO conspiracy under New Jersey law are discussed in James Lyle's opening brief at 25-26 n.11. *See also* Thomas Lehrman's opening brief at 22 n.12, 23.

[21]   In *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 482 n.6 (Del. 1991) the Delaware Supreme Court confirmed that in *Hunter Engineering* it adopted a stricter standard which it believed comported with the due process principles of *Intern'l Shoe Co. v. State of Wash.*, 326 U.S. 310 (1945), and its progeny, and rejected those cases that required only a minimal showing in order to confer jurisdiction upon the forum state, concluding that "such a minimalist approach was inconsistent with due process."

[22]   Similarly, in New York, where the conspiracy theory is analyzed under the agency prong of the long-arm statute, the courts require that a plaintiff seeking to invoke the theory also show "(a) the defendant had an awareness of the effects in New York of its activity, (b) the activity of the co-conspirator[] was to the benefit of the out-of-state co-conspirator[]; and (c) the co-

(Continued...)

### (a)   Plaintiffs Have Not Made A *Prima Facie* Factual Showing Of A Conspiracy, Of Which Lehrman Or Lyle Were Members

Not only do plaintiffs concede that in order to apply the conspiracy theory of jurisdiction they need to make a "factual showing of a conspiracy" and "allege specific facts warranting the inference that the defendant was a member of the conspiracy" (Opp. Br. at 46), but plaintiffs admit that they cannot meet this burden.  Plaintiffs flat out state that "Biovail cannot, at this nascent stage of the litigation, detail exhaustive particulars of the... independent connections between these defendants and their Enterprise co-conspirators." (*Id.* at 58).  Plaintiffs also concede that their allegations amount to nothing more than showing that Lyle and Lehrman "had the opportunity to participate in the Enterprise's affairs" and that Lehrman or Lyle "may be held to have participated, directly or indirectly in the conduct of the Enterprise." (*Id.* at 66).  As detailed below, in light of these concessions, it would be entirely inappropriate for this Court to apply the conspiracy theory of jurisdiction even if the Court assumed that New Jersey would recognize the theory.

The common thread of the cases finding that a plaintiff has failed to meet the requirements for applying the conspiracy theory is that the plaintiff failed to meet its burden of making a *prima facie* factual showing of conspiracy.  For example, in *Mandaglio v. United Brotherhood of Carpenters & Joiners of America.*, 528 F. Supp. 468 (E.D.N.Y. 1981), plaintiffs made no particular allegations concerning the defendant, other than identifying the defendant and alleging that he was part of the conspiracy.  The court held that "there is no basis in the present

conspirator[] acting in New York acted at the request or on behalf of the out-of-state defendant." *First Capital Asset Mgm't, Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 394 (S.D.N.Y. 2002); *Grove Press, Inc. v. Angleton*, 649 F.2d 122 (2d Cir. 1980); *Heinfling v. Colapinto*, 946 F. Supp. 260, 265 (S.D.N.Y 1996).

complaint even to infer that the alleged conspirators ever met or discussed their plan." *Id.* at 471. Similarly, in *Schwartz*, the court held that even if it were to accept the conspiracy theory, the allegations in the counterclaim and affidavit were for the most part conclusory and did not constitute a *prima facie* showing of conspiracy. 169 Vt. at 1967. In *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 602, 604 (S.D.N.Y. 1998) the court similarly held that "because the Complaint lacks a clear, well-defined explanation of [defendant's] role in the alleged conspiracy and lacks any references to specific connections between [defendant] and the conspiracy in [the forum], the exercise of jurisdiction would necessarily fail to meet the constitutional requirements for the exercise of personal jurisdiction."[23]

The cases also show that a plaintiff faces an even harder hurdle making a *prima facie* case of conspiracy where, as here, the moving defendants have submitted declarations disavowing their participation in any conspiracy. (Lehrman Decl. ¶ 6, Lyle Decl. ¶ 5). In *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449 (10th Cir. 1983), for instance, plaintiff alleged by an unverified complaint that a conspiracy existed. Defendants countered by sworn affidavits that no conspiracy existed. The court noted that plaintiff "failed to controvert defendants' affidavits other then by conclusory allegations in its complaint and brief," *Id.* at 1454, and "offered no sworn statements to contradict the

---

[23]  *See also* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1069.5 (3d ed. 2006) in which it is noted that: "it appears that the mere presence of one conspirator is not sufficient to confer personal jurisdiction over another alleged conspirator, at least in cases in which the plaintiff has not made a *substantial showing* in support of the allegations of a conspiracy, a requirement that is necessary to minimize the possibility that the allegations of conspiracy are being advanced to create jurisdiction but cannot, in fact, be supported." (emphasis added).

assertions in defendants' affidavits." *Id.* at n.2. Therefore, the court concluded that plaintiff "has not met its threshold burden of establishing jurisdiction over [defendants]." *Id.* Likewise, in *McLaughlin v. Copeland*, 435 F. Supp 513 (D. Md. 1977), the court examined plaintiffs' allegations in light of defendant's explicit denial that he was ever engaged in a conspiracy. *Id.* at 532. The court held that there was nothing before the court providing a basis for finding personal jurisdiction. As the court explained, "[a] plaintiff cannot be permitted to effect service on an out-of-state defendant on the mere basis that such plaintiff hopes somehow and somewhere to find enough facts to create grounds for jurisdiction." *Id.* at 533 (citations omitted). Similarly, in *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229 (6th Cir. 1981), after the plaintiff alleged a conspiracy, the defendants filed sworn affidavits stating that they had no knowledge of or connection to any conspiracy. The Sixth Circuit noted that the plaintiff did not submit any substantive affidavit in response to the defendants' affidavits and held that "under these circumstances... [plaintiff's] totally unsupported allegations of conspiracy cannot constitute sufficient contacts with [the forum] to justify an exercise of jurisdiction over [defendant] by the District Court." *Id.* at 1237. *See also Delta Brands Inc. v. Daniel Corp.*, No. 03-11052, 99 Fed. Appx. 1, at *20 (5th Cir. May 5, 2004) (noting that even if the court were to consider the conspiracy theory, plaintiff's argument would fail because the president of the defendant company explicitly denied in his affidavit that the company had conspired against plaintiff).[24]

---

[24] One of the cases that plaintiffs cite in support of their argument that the Court should recognize the conspiracy theory, *Edmond v. U.S. Postal Serv. Gen Counsel*, 949 F.2d 415 (D.C. Cir. 1992), actually buttresses this point. In that case, the court allowed jurisdictional discovery against three of the four defendants in a false arrest and malicious prosecution case involving an alleged racially-motivated conspiracy, when plaintiffs presented a third-party affidavit stating that defendants had admitted to him that "they had no evidence to put [plaintiffs] behind bars" and that they had repeatedly referred to plaintiffs using a racial epithet. *Id.* at 418. Judge Silberman's opinion concurring in part emphasized that for

(Continued...)

In this case, it is clear beyond all doubt that the allegations and evidence are far from sufficient to present a *prima facie* case of conspiracy.  As mentioned in footnote 1 *supra*, both Lyle and Lehrman are mentioned specifically only twice in the complaint, and never in connection with any tortious activity.  Other than those two references, Lyle and Lehrman are simply lumped in with the "defendants," "Gerson Lehrman Defendants," or as part of the "Enterprise" (*see, e.g.*, Compl. ¶ 36, 43, 161).  The Mishaan Affidavit plaintiffs submitted in opposition likewise provides no factual details that are specific to Lehrman or Lyle, but instead describes the many ways in which plaintiffs hope to conduct discovery on jurisdictional issues.  And the exhibits plaintiffs attach to their opposition do not demonstrate that Lehrman or Lyle had contacts with New Jersey, but rather that Gerson Lehrman had contacts with New Jersey (which, as detailed in Section III.A, *supra*, is irrelevant to the pending motion by Lyle and Lehrman).

Most importantly, though, both Lyle and Lehrman submitted sworn declarations in which they stated that they are unaware of any conspiracy (Lyle Decl. ¶ 6, Lehrman Decl. ¶ 7), did not take part in any conspiracy (Lyle Decl. ¶ 5, Lehrman Decl. ¶ 6), had nothing to do with the only allegations addressed against the Gerson Lehrman Defendants (Lyle Decl. ¶ 4, Lehrman Decl. ¶ 5), had no communications with any of the defendants (aside from communications in connection with being named as a defendant) concerning Biovail, the PLACE program, Biovail

---

jurisdictional conspiracy allegations, "our cases clearly require unusually particularized pleading," noting that "in every one of the conspiracy cases in this circuit since *Naartex*, the district court has found the pleadings insufficient to sustain jurisdiction." *Id.* at 428.  Judge Silberman explained that a "stringent" pleading standard is required not to allow plaintiffs "to subvert the important constitutional principles of sovereignty and due process that underlie personal jurisdiction limitations with mere 'unspecified and unsubstantiated claims' that multifarious defendants were part of a broad conspiracy and that one of them committed some tort in the plaintiffs' desired forum." *Id.* at 428 n.2.

securities or options or any plans to buy, sell or short-sell Biovail securities or options. (Lyle Decl. ¶ 7(d), Lehrman Decl. ¶ 8(d)) and never used the telephone or inter-state wires or sent anything through U.S. mail relating in any way to Biovail, the PLACE program or the scheme to deflate Biovail's stock price. (Lyle Decl.¶ 7(a)-(b), Lehrman Decl. ¶ 8(a)-(b)). As mentioned above, plaintiffs have presented no evidence to contradict these sworn declarations.[25]

Given plaintiffs' conclusory allegations of conspiracy, the denial of those allegations in Lyle's and Lehrman's sworn declarations, and plaintiffs' failure to come forward with anything to contradict those declarations, there can be no basis for applying the conspiracy theory of jurisdiction in this case.[26]

**(b)    Plaintiffs Have Failed To Show That Lyle Or Lehrman Knew Or Had Reason To Know That The Conspiracy Would Have An Effect In New Jersey**

Plaintiffs likewise cannot meet the additional requirements for applying the conspiracy theory of jurisdiction they concede are required under the standard established by the Delaware Supreme Court in *Hunter Engineering*, 449 A.2d at 225. (Opp. Br. at 47). As noted in Section III.B above, that court has held that a plaintiff must show that defendants knew or had reason to know that a conspiracy would have an effect in the forum for the conspiracy theory to apply. For

---

[25] Although irrelevant to any allegations about Lyle's alleged participation in a conspiracy, plaintiffs make much of the fact that although Lyle declared that he is currently living in the United Kingdom, someone accepted receipt of the complaint in New York (as evidenced by Pls. Ex. 11, which is a Certified Mail Receipt delivered to Lyle at 20 East 9th Street in New York City on March 16, 2006). As explained in Lyle's Supplemental Declaration, Lyle used to own an apartment at 20 East 9th street, which he sold prior to 2006. (Lyle Suppl. Decl. ¶ 2). This apartment is in a doorman building and it appears that the doorman signed the Receipt. (*Id.*)

[26] Consequently, the discovery requested by plaintiffs on the conspiracy theory, which they allege should proceed in tandem with the merits discovery -- should be denied. (Mishaan Aff. ¶ 8).

the reasons stated in Section II.B, *supra* (discussing the effects test), including the fact that Biovail's subsidiary was located in North Carolina in July 2003 when any of the alleged tortious conduct was purportedly carried out by the Gerson Lehman Defendants, plaintiffs have failed to establish this requirement as well.[27]

## IV. JURISDICTIONAL DISCOVERY SHOULD BE DENIED IN THIS CASE OR, IN THE ALTERNATIVE, SHOULD BE LIMITED

The decision on whether or not to permit jurisdictional discovery, and by extension which discovery to permit, is a matter committed to the sound discretion of the district court. *Molnlycke Health Care AB v. Dumex Medical Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 454 (E.D. Pa. 1999) ("[T]he scope of [] discovery is within the court's discretion, and allowing such discovery is premised on the assumption that further discovery would be worthwhile."). As detailed below, the Court should exercise its discretion in this case to deny discovery, but if discovery is permitted, it should be limited both in scope and duration.

### A.   JURISDICTIONAL DISCOVERY SHOULD BE DENIED IN THIS CASE

Although plaintiffs spend most of their brief pretending they have satisfied their burden of showing that Lyle and Lehrman are subject to personal jurisdiction in New Jersey, they ultimately fall back to requesting that the Court permit them to conduct discovery. In fact, what plaintiffs propose -- that the motion to dismiss be denied until all discovery on the merits is completed -- bears no resemblance to the kind of quick and substantively limited jurisdictional discovery courts sometimes permit in response to a Rule 12(b)(2) motion. As a threshold matter,

---

[27] For the same reasons, plaintiffs cannot make the showing required by the New York courts (*see* Section III.C.2, *supra*) that the defendant had an awareness of the effects in New Jersey of its activity. Plaintiffs have also not alleged that those co-conspirators acting in New Jersey acted at the request or on behalf of Lehrman or Lyle.

however, jurisdictional discovery should not be allowed because plaintiffs have failed to establish the *prima facie* showing required for jurisdictional discovery. *See, e.g., Parker v. Learn the Skills Corp.*, No. Civ. A. 05-2752, 2006 WL 759693, at *4 (E.D. Pa. Mar. 23, 2006) (denying motion for jurisdictional discovery); *Bank Express Int'l v. Kang*, 265 F. Supp. 2d 497, 506-07 (E.D. Pa. 2003) (denying jurisdictional discovery because plaintiff had failed to demonstrate a *prima facie* case for *specific* jurisdiction).[28] As detailed in Section I, *supra*, conclusory allegations unsupported by "sworn affidavits or other competent evidence" are insufficient to establish a *prima facie* showing of jurisdictional facts. *See, e.g., Time Share*, 735 F.2d 61, 66 n.9. Accordingly, allegations that do not suggest with "reasonable particularity the possible existence of the requisite contacts" will not warrant jurisdictional discovery. *Dluhos v. Stasberg*, 2005 U.S. Dist. LEXIS 34385, at *21 (citations omitted); *Fritsch v. F/V Anna Marie*, Civ. No. 05-3495 (JBS), 2006 WL 995411, at *2 (D.N.J. Apr. 11, 2006) (same).[29]

Moreover, where, as here, a defendant has submitted affidavits attesting to the absence of personal jurisdiction and plaintiffs respond with mere speculation about what jurisdictional discovery may show, courts are particularly unwilling to permit jurisdictional discovery. *Poe v. Babcock Int'l*, 662 F. Supp. 4, 7 (M.D. Pa. 1985); *Southern Ocean Seafood Co. v. Holt Cargo Syst.*, No. Civ. A. 96-5217, 1997 WL 539763, at *8 (E.D. Pa. Aug. 11, 1997) (denying

---

[28]   *See also Am. Centennial Ins. v. Handal*, 901 F. Supp. 892, 899 (D.N.J. 1995); *Rose v. Granite City Police Dep't*, 813 F. Supp. 319, 321 (E.D. Pa. 1993) (denying plaintiff's motion for discovery because plaintiff "failed to make even a threshold *prima facie* showing that the Court has jurisdiction" over defendants and dismissing action); *N. Penn. Gas. Co. v. Corning Nat'l Gas Corp.*, 897 F.2d 687, 690 (3d Cir. 1990).

[29]   *See also Smith v. S & S Dundalk Eng'g Works, Ltd.*, 139 F. Supp. 2d 610, 619 (D.N.J. 2001) (granting motion to dismiss for lack of personal jurisdiction without discovery because "plaintiffs make only conclusory allegations, unsupported by anything other than the fact that some entity [named similarly to defendants] may possibly do business in several states").

jurisdictional discovery where plaintiff offered mere speculation that defendants had jurisdictional contacts); *Karibjanian v. Thomas Jefferson Univ. Hosp.*, No. Civ. A. 89-1891, 1990 WL 6131, at *1 (E.D. Pa. Jan. 25, 1990). For example, in *Poe*, a plaintiff sued the parent company of his former employer for wrongful discharge. When the defendant moved to dismiss for lack of jurisdiction, the plaintiff argued he was entitled to jurisdictional discovery to determine whether the parent company was the "alter ego" of a company that did business in the forum. The court denied the request for jurisdictional discovery holding:

> [T]he memoranda which have been filed in response to defendants' motion contain speculation, but no facts by which jurisdiction can be established... that burden can only be met by showing that the other defendants are not separate corporate entities. Plaintiff has failed to produce any evidence that [defendant] is a mere "alter ego" of the other defendants, and therefore has not met his burden. Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied.

662 F. Supp. at 7. As the Court explained, allowing jurisdictional discovery based on mere speculation would impermissibly permit a plaintiff to use discovery as a fishing expedition. *Id.* at 7. *See also Arch v. American Tobacco Co., Inc.*, 984 F. Supp. 830, 841 (E.D. Pa. 1997) ("discovery should not be used for a fishing expedition" by plaintiff "in the hopes that it may uncover some evidence supporting jurisdiction"); *Telcordia Tecs., Inv. v. Alcatel S.A.*, No. Civ. A. 04-874 GMS, 2005 WL 1268061, at *9 (D. Del. May 27, 2005) (same).[30] As the court held in *Hansen v. Neumeuller GmbH*, 163 F.R.D. 471, 476 (D. Del. 1995), "a court cannot permit

---

[30] *See also Base Metal Trading Ltd. v. OJSC Novokuznetsky Aluminum Factory*, 47 Fed. Appx. 73 (3d Cir. Sept. 5, 2002) (unpublished) ("[W]here, as here, the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction, we see no reason to overturn the district court's exercise of discretion.") (citations omitted).

discovery as a matter of course simply because a plaintiff has named a particular party as a defendant."

The authorities denying jurisdictional discovery apply with particular force here because Lyle and Lehrman are individuals, not corporate entities. As the Third Circuit explained in *Massachusetts School of Law v. American Bar Association*, 107 F.3d 1026, 1042 (1997), "[w]here the defendant is an individual, the presumption in favor of discovery is reduced." *See also Shaw v. Boyd*, 658 F. Supp. 89, 91 n.1 (E.D. Pa. 1987) (finding that further discovery was not warranted because the defendant was an individual).

The two Third Circuit cases plaintiffs cite to support their request for jurisdictional discovery (Opp. Br. at 30) are both inapposite. First, both cases involved discovery of a corporate defendant, and not -- as here -- of individuals. *See Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283 (3d Cir. 1994); *Toys "R" Us v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). Second, both cases were based on the stream of commerce theory of jurisdiction[31] -- a theory plaintiffs have not invoked in this case. Most importantly, though, in both cases plaintiffs had made a *prima facie* showing of personal jurisdiction. In *Renner*, for example, plaintiffs offered two affidavits to show that defendant's products were still sold in the forum and presented documents showing that the defendant had tested the product at issue for compliance with the standards of the store located in the forum. *Id.* Here, in contrast, plaintiffs' attorney affidavit and exhibits do not evidence any jurisdictional contacts between Lehrman and Lyle and New Jersey but rather seek broad discovery on the theory that Lyle and Lehrman may have contacts

---

[31] Under this theory, "a manufacturer may be held amenable to process in a forum in which its products are sold, even if the products were sold indirectly through importers or distributors with independent sales and marketing schemes." *Renner*, 33 F.3d at 280 (citations omitted).

37

with New Jersey. (*See, e.g.*, Mishaan Aff. ¶¶ 17, 19, 23, 30, 41, 47, 50). This cannot be enough to allow jurisdictional discovery to proceed, especially here, where plaintiffs want to force Lyle and Lehrman through years of discovery before the Court resolves whether plaintiffs had any basis to name them as defendants. (Opp. Br. at 31-32; Bowe Aff. ¶ 54; Mishaan Aff. ¶ 8).

Because plaintiffs have failed to establish a *prima facie* case of personal jurisdiction by presenting "actual proof" of the existence of the requisite jurisdictional contacts (for either general jurisdiction or specific jurisdiction) between Lyle and Lehrman, on the one hand and New Jersey, on the other hand, plaintiffs' request for jurisdictional discovery should be denied.

## B.   IF JURISDICTIONAL DISCOVERY IS GRANTED, IT SHOULD BE STRICTLY LIMITED

Even assuming plaintiffs had made an adequate showing to permit jurisdictional discovery (and they have not), the discovery they seek vastly exceeds the scope and duration of the discovery that should be permitted. Where courts permit jurisdictional discovery, they traditionally limit it in: (i) scope -- to only those facts necessary to establish personal jurisdiction over the defendants; and (ii) duration -- to a short period, typically forty-five to ninety days.

### 1.   Discovery Should Be Limited In Scope

Although plaintiffs seek wide-ranging discovery that they characterize as jurisdictional and seek to conduct it in tandem with unlimited merits discovery, (Mishaan Aff. ¶ 8), it is axiomatic that jurisdictional discovery is limited in scope to those facts necessary to determine whether personal jurisdiction is appropriate. For example, in *Toys "R" Us*, the Third Circuit case upon which plaintiffs have principally relied (Opp. Br. at 30, 50), the court allowed only "limited jurisdictional discovery." 318 F.3d at 457. *See also Nehemiah v. Athletics Congress of the USA*, 765 F.2d 42 (3d Cir. 1985) (allowing "limited and appropriate jurisdictional discovery"). As the Third Circuit noted in *Toys "R" Us*, "Toy's request for jurisdictional

38

discovery was specific, non-frivolous, and a logical follow-up based on the information known to Toys." *Id.* In contrast, plaintiffs here have requested broad discovery (only limited by Fed. R. Civ. P. Rule 26, *see* Pls. Proposed Order), in which "jurisdictional discovery and merits discovery... proceed in tandem." (Opp. Br. at 5). Plaintiffs have also not presented any facts that would allow for "logical follow-up" jurisdictional discovery.[32]

Thus, consistent with Third Circuit case law, if jurisdictional discovery is granted in this case, it should be limited to:[33] (i) discovery from Lyle and Lehrman (and though not required, if the Court desires, from the corporate entities GLG and GLGBS) on whether Lyle and Lehrman have continuous and systematic contacts with New Jersey (as required for general jurisdiction); or (ii) on whether Lyle and Lehrman had any contacts themselves with New Jersey concerning Biovail or *The Wall Street Journal* or *Barron's* articles (as required for specific jurisdiction).[34]

## 2. Discovery Should Be Limited In Duration

The most shocking instance of plaintiffs' overreaching is their request that jurisdictional discovery on this motion continue so long as merits discovery proceeds against the other

---

[32] *See also Schwartz v. Comcast Corp.*, No. Civ. A. 05-2340, 2005 WL 1799414, at *7 (E.D. Pa. Jul. 28, 2005) (allowing plaintiff "to engage in limited discovery"); *Impact Labs, Inc. v. X-Rayworld.com, Inc.*, No. Civ. A. 03-211, 2003 WL 21715872 (D. Del. Jul. 24, 2003).

[33] It should be noted that all Gerson Lehrman Defendants reserve any and all objections to any jurisdictional discovery pursuant to the relevant rules of civil procedure.

[34] As discussed in Section III.C, *supra*, discovery on the alleged conspiracy theory of jurisdiction should be denied because it is doubtful that this doctrine would be recognized in New Jersey and even if it were, plaintiffs failed to make a *prima-facie* factual showing of conspiracy to allow the theory to be applied here. Similarly, as discussed in Section III.B, *supra*, discovery on the effects theory should not be allowed, since BPI was not even located in New Jersey until November 2003. If, however, any discovery is allowed under the effects theory, it should be limited to the single relevant question: whether any actions the defendants took outside the forum concerning Biovail or the July 2003 *Wall Street Journal* or *Barron's* articles were "targeted toward New Jersey."

defendants. (*See, e.g.*, Opp. Br. at 32). In the limited cases in which jurisdictional discovery is allowed, courts in the Third Circuit typically grant only a brief period in which it can be conducted, usually between forty-five and ninety days. *See, e.g., Royal Gist-Brocades N.V. v. Sierra Prods. Ltd.*, No. Civ. A .97-1147, 1997 WL 792905 (E.D. Pa. Dec. 22. 1997) (45 days); *Oeschle v. Pro-Tech Power, Inc.*, No. Civ. A. 03-CV-6875, 2006 WL 680908, at *6 (E.D. Pa. Mar. 15, 2006) (60 days); *Forbes. v. Eagleson*, No. Civ. A. 95-7021, 1996 WL 420829, at* 7 (E.D. Pa. Jul. 23, 1996) (90 days).[35]

What plaintiffs seek in allowing unlimited jurisdictional discovery to proceed in tandem with the merits discovery turns the logic of jurisdictional motions on its head. This Court should prevent such a result and limit any jurisdictional discovery to no more than ninety days.[36]

## CONCLUSION

For the foregoing reasons and the reasons stated in the opening briefs, plaintiffs' claims against James Lyle and Thomas Lehrman should be dismissed for lack of personal jurisdiction.

---

[35] The only case plaintiffs cite in support of the argument that jurisdictional discovery should proceed along with the merits, *In re Publication Paper Antitrust Litigation*, No. 304M01631 SRU, 2005 WL 2175139, at *7 (D. Conn. Sept. 7, 2005), is from another Circuit and has not been cited since its issuance. In any event, the case concerns application of the particular venue provisions of the Clayton Act, not any issue of New Jersey law. *Id.* at *7.

[36] In the opening brief, Lyle and Lehrman made the argument that due process should prevent this Court from finding personal jurisdiction over them, given the fact that Lyle lives in the United Kingdon and given Lehrman's position and responsibilities at the Department of State. Notwithstanding the validity of these arguments, Lyle and Lehrman rest on the evidence and arguments presented that they had no minimum contacts with New Jersey (and therefore that personal jurisdiction does not exist over them) and will not pursue the due process argument in the event that this Court finds minimum contacts between Lyle and Lehrman and New Jersey. Consequently, the broad discovery requested by plaintiffs on the issue of Lyle and Lehrman's burden is irrelevant. (Mishaan Aff. ¶¶ 44-45, 50-51).

Dated:  June 26, 2006

PITNEY HARDIN LLP

By: _____

ANTHONY MARCHETTA (AM 7718)
200 Campus Drive
Florham Park, NJ  07932
Phone:      (973) 966-6300
Facsimile:  (973) 966-1015

*Attorneys for Defendants Thomas Lehrman and
James Lyle*

Of Counsel:

KIRKLAND & ELLIS LLP
Yosef J. Riemer (admitted *pro-hac-vice*)
Galia Messika (admitted *pro-hac-vice*)
Shira Schlaff
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900

41